PORT HURON AREA SCHOOL DISTRICT v PORT HURON
EDUCATION ASSOCIATION

Docket No. 72647. Argued March 6, 1986 (Calendar No. 1). Decided
   October 3, 1986.

The Port Huron Area School District brought an action in the St.
   Clair Circuit Court against the Port Huron Education Associa-
   tion, seeking to have set aside as exceeding arbitral jurisdiction
   and authority an arbitrator's decision that a male teacher's
   seniority rights under a collective bargaining agreement be-
   tween the district and the association had been violated when
   the district recalled a female teacher with less seniority to fill a
   high school girls' physical education position. The court, Ernest
   F. Oppliger, J., granted summary judgment for the district. The
   Court of Appeals, T. M. BURNS, P.J., and D. F. WALSH and
   SIMON, JJ., reversed in an unpublished opinion per curiam
   (Docket No. 63636). The plaintiff appeals.

   In an opinion by Justice RILEY, joined by Chief Justice
   WILLIAMS and Justices BRICKLEY, CAVANAGH, BOYLE, and
   ARCHER, the Supreme Court *held:*

   The award of the arbitrator is unenforceable. In granting the
   award, the arbitrator clearly exceeded the scope of his author-
   ity which was expressly and unambiguously circumscribed in
   the arbitration contract.

   1. Labor arbitration is a product of contract, and its legal
   basis depends entirely upon the particular contracts of particu-
   lar parties. An arbitrator possesses no general jurisdiction to
   resolve matters independent of the arbitration contract; rather,
   jurisdiction and authority to resolve a particular dispute con-
   cerning the appropriate interpretation of a collective bargain-

REFERENCES

Am Jur 2d, Arbitration and Award §§ 90 *et seq.,* 167 *et seq.*

Am Jur 2d, Labor and Labor Relations §§ 1851 *et seq.,* 1984-1988.

Validity and construction of statutes or ordinances providing for
   arbitration of labor disputes involving public employees. 68
   ALR3d 885.

See also the annotations in the ALR3d/4th Quick Index under
   Arbitration and Award; Labor and Labor Unions.

ing agreement derives exclusively from the contractual agreement of the parties.

2. Judicial review of an arbitrator's decision is limited; a court may not review an arbitrator's factual findings or decisions on the merits. Whether an arbitrator exceeded his contractual authority is an issue for judicial determination. An arbitrator's jurisdiction and general remedial authority are entirely subject to the agreement of the parties. An arbitrator's award is properly vacated where the award is dependent upon the arbitrator's interpretation of provisions expressly withheld from arbitral jurisdiction or upon the arbitrator's disregard and contravention of provisions expressly limiting arbitral authority.

3. In this case, the jurisdiction and authority of the arbitrator was expressly and specifically limited, and his award was dependent upon his disregard of those specific terms and conditions which were reflected in the provisions of the arbitration agreement. The arbitrator clearly exceeded his contractual authority, and the award is unenforceable.

4. The school district, by not initially challenging the arbitrability of the grievance, did not waive its right to have the arbitration agreement enforced in accordance with its terms. Whether the grievance was arbitrable on its face is entirely distinguishable from whether the award was properly vacated on the ground that the arbitrator exceeded his jurisdiction and authority.

Reversed.

Justice LEVIN stated that the question presented is whether the arbitrator exceeded his authority in deciding that the seniority clause of the collective bargaining agreement required that the position of physical education teacher be assigned without regard to the sex of the teacher, although this in effect rendered unenforceable, in the case of a male teacher, the school district's decision to include locker and shower room supervision as a duty and qualification of the job.

The arbitrator, in construing the agreement as a whole to find that the district's right under the management rights clause to establish gender as a job qualification was specifically limited by express provision of the preamble that the agreement was to be applied without regard to sex, did not exceed his authority. The grievance asserted violations of the seniority provisions of the agreement. The district defended on the basis of its right, under the management rights clause, to establish sex as a job qualification. Whether it had such a right was a question of construction and not arbitral authority. The pream-

ble, being a specific limitation in the agreement, was properly considered in its construction. In deciding the issue, the arbitrator necessarily considered the relative importance of the competing rights and prerogatives and made a judgment based on reason.

## Opinion of the Court

1. Arbitration — Schools — Arbitrators — Collective Bargaining — Authority.

   An arbitrator's jurisdiction and authority to resolve a particular dispute concerning the appropriate interpretation of a collective bargaining agreement derives exclusively from the agreement; an arbitrator possesses no general jurisdiction to resolve matters independent of that provided by the agreement.

2. Arbitration — Schools — Arbitrators — Collective Bargaining — Authority — Judicial Review.

   Whether an arbitrator exceeded his contractual authority is an issue for judicial determination; an arbitrator's award is properly vacated when the award is dependent upon an arbitrator's interpretation of provisions expressly withheld from arbitral jurisdiction under a collective bargaining agreement, or upon an arbitrator's disregard and contravention of provisions expressly limiting arbitral authority.

### Opinion by Levin, J.

3. Arbitration — Schools — Arbitrators — Collective Bargaining — Authority.

   *Whether a school district had a right under the management rights clause of a collective bargaining agreement to establish gender as a job qualification was a question of construction of the agreement as a whole, rendering proper consideration by an arbitrator of specific limitations in the preamble of the agreement precluding use of sex in the application of the agreement's provisions.*

*Touma, Watson, Nicholson, Whaling, Fletcher & DeGrow, P.C.* (by *Gary A. Fletcher* and *Michael L. West*), for the plaintiff.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann* and *Eli Grier*) for the defendant.

Riley, J. The question presented concerns the

limited scope of judicial review of labor arbitration awards in situations in which it is claimed that the arbitrator exceeded his contractual authority in granting an award. We hold that, in the present case, in light of the express contractual limitations upon arbitral jurisdiction and authority reflected in the arbitration agreement, the award is unenforceable. In granting the award, the arbitrator clearly exceeded the scope of his authority as expressly circumscribed in the arbitration contract.

I

In accordance with the labor agreement between the Port Huron Area School District and the Port Huron Education Association, the school district instituted layoffs in the spring of 1980, because of financial difficulties the school district was experiencing. Prior to 1980, it had always been possible to have at least one male and one female physical education teacher on duty for all of the classes. Additionally, teachers' aides (of the same sex as their assigned students) had been employed to assist in locker room supervision when it had not been possible to match teachers of the same sex as the students with the position in one previous year. The teacher's aide positions, however, were eliminated during the 1979-80 school year in an overall austerity program to address the financial problems experienced by the school district.[1]

The school district established a procedure by

---

[1] The school district found that the teachers' aides could not satisfactorily assist in the locker room supervision responsibilities of physical education teachers because they were not trained to advise and assist the students regarding personal hygiene, lacked disciplinary skills, and reported to the principal and not the teacher. Thus, as a means of addressing their force crisis, the school district elected not to assume the extra expense of employing teachers' aides to perform that function.

which it would have both a male and a female physical education instructor at each of its two high schools and that these instructors would be of the same sex as their students and be responsible, without the assistance of aides, for locker room supervision which consumes approximately twenty-five percent of the teachers' time. During the restaffing process, it appears that one male physical education teacher resigned and was replaced by a laid-off male teacher. There also appears to have been a rescheduling error and the recalled male teacher was assigned a teaching schedule which included some time periods when he would be the only teacher on duty and, thus, the only supervisor on duty for the girls' locker room. The school district resolved this error by adjusting the teaching schedules, thereby creating a vacancy for the position of girls' physical education teacher. Consistent with the same sex qualifications previously established by the school district, and the policy decision to eliminate the employment of teachers' aides, the most senior available male teacher was passed over, and the position was offered to the most senior available female physical education teacher. The male teacher was given another assignment in the school district.

The male teacher who was passed over filed a grievance on September 19, 1980, alleging that he was the most senior qualified teacher to hold the position and that he was not offered the position in violation of the recall and seniority provisions incorporated in Article II of the collective bargaining agreement. Section 3, ¶¶ C(3)(e) and 4(c) of that article read as follows:

> If a vacancy arises for which a teacher on layoff
> is qualified, the District shall notify such teacher

of the vacancy in writing by certified mail
notice . . . .

\* \* \*

In the event that anyone on the Placement List
resigns, the Division for Personnel Administration
shall take action to issue a contract to the next
available teacher on the Seniority List who quali-
fies for the vacancy.

The grievant asked that the position in question
be given him.

The employer, responding on October 22, 1980,
denied the grievance, asserting that the grievant
was not offered the position because he was not a
teacher who qualified for the vacancy:

One of the qualifications used by the District
during the placement and staffing process was that
a teacher who teaches girls physical education
classes must be a female instructor in order to
provide locker room supervision. As there would
have been no afternoon female physical education
teacher at Port Huron High School if Mr. Grinder
had been recalled from layoff to that position, it
was necessary that we recall the next female
physical education teacher, which we did. Mr.
Grinder did not meet the qualifications required to
fill the position, therefore, there is no violation of
the Agreement and the grievance is denied.

The grievance proceeded to arbitration,[2] and the
hearing was conducted on May 26, 1981. The
arbitrator upheld the grievance, finding that the
use of gender as a criterion in offering the girls'
physical education teaching position violated the
professional agreement. The arbitrator, in his writ-
ten opinion, expressly found that the use of sex as
a qualification was prohibited by the preamble of

[2] The grievance proceeded through each of the five steps provided
for in the collective bargaining agreement to precede arbitration and
was denied at each step.

the contract, and that his authority, consistent with arbitral jurisdiction generally,[3] extended to determining whether the school district's management decision was "reasonable and necessary." The arbitrator concluded that the school district had not established the "reasonableness and necessity" of its management decision, that the use of sex as a qualification was prohibited by the preamble of the contract, and, therefore, that pursuant to the seniority provisions of the contract, the grievant was entitled to the girls' physical education position, notwithstanding the required locker room supervision responsibilities. The arbitrator emphasized that his decision did not authorize other sex supervision and, apparently, implied that the school district must increase its staff to execute that function.

The school district commenced the present action in circuit court on September 16, 1981, seeking to have the award set aside as being in excess of the arbitrator's jurisdiction and authority which was expressly limited and circumscribed by provisions of the arbitration contract. The education association answered, asking the court to confirm the award, and the matter was submitted on cross-motions for summary judgment.[4] The circuit court granted the school district's motion and set aside the arbitration award on the ground that the arbitrator clearly exceeded his contractual authority in granting the award.

The education association appealed, and the

[3] The arbitrator said that "many arbitrators" employ such an approach. He declined, however, to mention the specific management rights and arbitration provisions reflected in the contract which he was specifically commissioned to interpret, and from which his specific jurisdiction and authority was exclusively derived, which expressly restricted such an approach.

[4] The association did not argue that the school district had waived its right to challenge the award on the ground asserted, but contended only that the award should be confirmed because it did not exceed the arbitrator's jurisdiction or authority.

Court of Appeals reversed in an unpublished opinion. We granted the school district's application for leave to appeal. 422 Mich 856 (1985).

II

The parties are generally in agreement with regard to the law to be applied in this case. It is well-settled that arbitration is a favored means of resolving labor disputes and that courts refrain from reviewing the merits of an arbitration award when considering its enforcement. To that extent, judicial review of an arbitrator's decision is very limited; a court may not review an arbitrator's factual findings or decision on the merits.

The United States Supreme Court expressed the federal policy of judicial deference in the context of labor arbitration in the celebrated *Steelworkers' Trilogy.*[5] This Court expressed its general acceptance of such a policy, similarly, in *Frazier v Ford Motor Co,* 364 Mich 648; 112 NW2d 80 (1961). See *Carr v Kalamazoo Vegetable Parchment Co,* 354 Mich 327; 92 NW2d 295 (1958). See also *Kaleva-Norman-Dickson School Dist v KND Teachers' Ass'n,* 393 Mich 583; 227 NW2d 500 (1975).

The legal basis underlying this policy of judicial deference is grounded in contract: the contractual agreement to arbitrate and to accept the arbitral decision as "final and binding." Labor arbitration is a product of contract, and, therefore, its legal basis depends entirely upon the particular contracts of particular parties. Arbitration contracts may vary, according to their specific terms, in the scope of the matters entrusted to final and binding

---

[5] *United Steelworkers v American Mfg Co,* 363 US 564; 80 S Ct 1343; 4 L Ed 2d 1403 (1960); *United Steelworkers v Warrior & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *United Steelworkers v Enterprise Wheel & Car Corp,* 363 US 593; 80 S Ct 1358; 4 L Ed 2d 1424 (1960).

arbitration, and in the arbitral authority conferred to resolve disputes concerning such matters.[6] An arbitrator's jurisdiction and authority to resolve a particular dispute concerning the appropriate interpretation of a collective bargaining agreement derives exclusively from the contractual agreement of the parties; an arbitrator possesses no general jurisdiction to resolve such matters independent of the arbitration contract.[7]

There is no contention, in the present case, that the merits of the award here in question are subject to review. The only issue is whether the arbitrator, in granting the award, disregarded the terms of his employment and the scope of his authority as expressly circumscribed in the arbitration contract. Parties consenting to arbitration pursuant to written agreements consent to arbitrate within the framework of the terms and conditions of such agreements. An arbitrator who refuses to recognize the terms and conditions expressly circumscribing his jurisdiction and authority in resolving a submitted dispute, thereby exceeding the limits upon which the contractual submission is based, exceeds the consensual au-

---

[6] Concurring in *American Mfg Co,* n 5 *supra,* 570, Justice BRENNAN emphasized:

[T]he arbitration promise is itself a contract. The parties are free to make that promise as broad or as narrow as they wish, for there is no compulsion in law requiring them to include any such promises in their agreement.

[7] The Court in *Warrior & Gulf,* n 5 *supra,* 581, explained:

"A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties." [Quoting Sulman, *Reason, contract, and law in labor relations,* 68 Harv L R 999, 1016 (1955).]

thority bestowed upon him by the contract, and the award resulting therefrom is without legal sanction. Whether an arbitrator exceeded his contractual authority is an issue for judicial determination. This well-established principle is within the limited scope of judicial review of labor arbitration awards and was articulated by the United States Supreme Court in *United Steelworkers v Enterprise Wheel & Car Corp, 363 US 593, 597; 80 S Ct 1358; 4 L Ed 2d 1424 (1960)*:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

Although the judicial policy favoring labor arbitration warrants a strong presumption in favor of enforcing arbitral awards, an award is properly vacated when that award is dependent upon an arbitrator's interpretation of provisions expressly withheld from arbitral jurisdiction, or upon an arbitrator's disregard and contravention of provisions expressly limiting arbitral authority.[8]

Thus, while an arbitrator has considerable lati-

---

[8] There are many ways in which an arbitrator may exceed his authority. See *United States Postal Service v Nat'l Rural Letter Carriers Ass'n,* 535 F Supp 1034 (ND Ohio, 1982). The issue in the present case requires us to consider whether the arbitrator disregarded express provisions of the arbitration contract specifically withholding arbitral jurisdiction and authority. An arbitrator can bind the parties only on issues that they have agreed to submit to him. See *Piggly Wiggly Operators' Warehouse, Inc v Piggly Wiggly Truck Drivers Union,* 611 F2d 580 (CA 5, 1980). Similarly, the parties are free to contractually limit an arbitrator's authority in resolving otherwise arbitrable disputes.

tude, his powers are not unlimited in the resolution of labor disputes; the arbitrator remains a creature of the contract, and his "subject matter" jurisdiction and general remedial authority remain entirely subject to the agreement of the parties. See, generally, St. Antoine, *Judicial review of labor arbitration awards: A second look at* Enterprise Wheel *and its progeny,* 75 Mich L R 1137 (1977).

### III

The circuit court vacated the award, in the instant case, on the ground that the award was dependent upon the arbitrator's interpretation of a provision of the preamble to the collective bargaining agreement which was expressly withheld from arbitral jurisdiction. Additionally, the court found that the award was dependent upon the arbitrator's disregard of a provision of the arbitration contract expressly limiting arbitral authority in the resolution of otherwise arbitrable disputes with respect to the specific reservation of management rights.

The Court of Appeals, reversing the decision of the circuit court, agreed that the arbitrator relied upon the interpretation of provisions expressly withheld from arbitral jurisdiction, but held that the award was not dependent upon it: that an independent basis, within the arbitral authority conferred by the contract, may have existed to support the award. The Court further held that the school district had waived its right to challenge the award on the ground that it was in excess of the arbitrator's authority because the school district failed to challenge the "arbitrability" of the grievance in the first instance.

We consider first whether the arbitrator ex-

ceeded his contractual authority and whether the award was dependent on it, and, second, whether the school district waived its right to challenge the award by voluntarily submitting to arbitration without challenging the arbitrability of the grievance in the first instance.

A

The parties in the instant case addressed, in specific terms, the arbitrator's authority in their agreement. Some of the relevant provisions circumscribing arbitral jurisdiction and authority expressly set forth in the arbitration agreement are as follows:

2. Powers of Arbitrator

a. The arbitrator shall be empowered, *except as limited herein,* . . . to make a decision in cases of alleged violations, misinterpretations, or misapplications of a specific Article and Section of this Agreement.

(1) *He shall have no power to* add to, subtract from, *disregard,* alter, *or modify any of the terms of this Agreement.*

(2) *He shall have no power to* establish salary scales, change any salary figures in the Agreement, or *increase or change any staffing requirements* set forth in this Agreement.

\*   \*   \*

(4) His powers shall be limited to deciding whether the District has violated specific Articles or Sections of this Agreement. *It is agreed . . . he shall have no power to change any practice, policy or rule of the District through substituting his judgement for that of the District as to the reasonableness of any practice, policy, rule or any action taken by the District.*

\*   \*   \*

(6) In rendering decisions, *he shall give full*

*recognition to the responsibilities of the Board as indicated in Article IX, Paragraph E,* which establishes the District's rights, powers and authority as that exercised or had by it prior to the date of this Agreement.

His decision shall be consistent with the rights reserved to the District by this provision.

(7) . . . .

b. Although the Arbitrator may cite case law in making his award *he shall have no power to interpret State and/or Federal Law,* to hear any matters involving constitutional rights or to render any provisions of this Agreement inapplicable by reason thereof.

c. The Arbitrator's decision shall be submitted in writing and shall set forth his findings and conclusions with respect to the issue submitted to arbitration.

d. There shall be no appeal from an Arbitrator's decision *if within the scope of his authority* as set forth herein, and it shall be final and binding . . . .

\*    \*    \*

N. Grievances concerning the following *shall not proceed* past Step 5 of the grievance procedure [the last step before arbitration]:

*Preamble* . . . .

\*    \*    \*

ARTICLE IX—MISCELLANEOUS

A. *This Agreement* constitutes the sole and entire existing Agreement between the parties and *supersedes all prior practices,* whether oral or written, and expresses all obligations of, and restrictions imposed upon, the District and the Association. This *Agreement is subject to amendment, alteration or additions, only by a subsequent written agreement* between, and executed by, the District and the Association. The waiver of any breach, term or condition of the Agreement by either party shall not constitute a precedent in the future enforcement of all its terms and conditions. [Emphasis added.]

The arbitrator, in the present case, issued a written decision in which his findings and conclusions were outlined in detail in accordance with the contractual provision reflected in the arbitration agreement requiring him to do so.[9] That written decision reflects the conclusions and authority upon which the award was based as follows.

First, although neither the grievance nor the answer which was submitted implicated the preamble to the collective bargaining agreement which was, indeed, expressly withheld from arbitral jurisdiction,[10] the arbitrator, on his own initiative, proceeded to interpret § F as prohibiting the use of sex as a qualification for the position of girls' physical education teacher. That section of the preamble reads as follows:

> The District and the Association mutually pledge themselves to continue to recognize the full constitutional and civil rights of all teachers. . . . The provisions of this Agreement shall be applied without regard to race, creed, religion, color, sex, age or national origin.

The arbitrator interpreted that section of the preamble as prohibiting the use of sex as a bona fide occupational qualification, notwithstanding the arbitration contract's specific and unambiguous provision that the appropriate interpretation of that section of the preamble was expressly withheld from arbitral jurisdiction.[11]

---

[9] The arbitrator was required to issue a written decision reflecting the findings and conclusions supporting his award by express provision of the arbitration agreement.

[10] By express contractual agreement specifically reflected in the arbitration agreement, grievances concerning the preamble were not subject to arbitration.

[11] Arbitral authority to interpret "State and/or Federal Law" was also affirmatively withheld by express agreement of the parties in another provision of the arbitration contract. The parties' intent to

Next, the arbitrator, considering "what contractual authority the District use[d] to support its action," said:

> It is customary for arbitrators to review broadly the powers conferred upon the Employer by the management rights clause. However, many arbitrators seek to determine *whether the disputed power is related in a reasonable manner to the orderly and efficient operation of the enterprise.* This is the view taken here where the contractual limitations on such rights are so unambiguous. [Emphasis added.]

The arbitrator concluded that "the District has some affirmative burden to persuade the arbitrator of the operational reasonableness and necessity for its action," and, that in the "absence of compelling reasons to the contrary" the use of a same-sex qualification for the position of girls' physical education teacher violated § F of the preamble, and, therefore, could not be used in applying the seniority and recall provisions of the agreement.

The arbitrator questioned the reasonableness of the school district's decision to eliminate the use of aides, which were used in one previous school year to fulfill the teachers' locker room supervision

withhold disputes concerning civil rights from their arbitration agreement is clearly expressed. The underlying reasons for withholding such disputes from arbitration is supported by the United States Supreme Court's reasoning in its recent decision in *McDonald v West Branch,* 466 US 284; 104 S Ct 799; 80 L Ed 2d 302 (1984).

Such disputes are exceptions from the finality doctrine of the federal policy favoring the enforcement of labor arbitration awards. Arbitration agreements, and the submission of disputes pursuant thereto, for example, do not preclude subsequent actions brought by employees under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.,* 42 USC 1983, or the Fair Labor Standards Act, 29 USC 201 *et seq.* See *McDonald, supra,* discussing *Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974); *Barrentine v Arkansas-Best Freight System, Inc,* 450 US 728; 101 S Ct 1437; 67 L Ed 2d 641 (1981).

functions, and, in effect, his award required the
school district to recreate those positions.[12]

Arbitral authority to determine the "reasonable-
ness and necessity" of management policy deci-
sions was limited by express contractual provi-
sion.[13] The arbitrator's reasoning that the school
district was required to establish the "reasonable-
ness and necessity" of its management decision
making gender a bona fide occupational qualifica-
tion for the position of girls' physical education
teacher, a position which requires locker room

---

[12] The arbitrator said:

It should be obvious but warrants specific mention that this
reasoning above does not authorize other-sex supervision of
locker rooms in the District. It merely states that . . . sex
cannot be used as an occupational requirement here.

It should be noted again that by express contractual provision the
arbitrator lacked the authority to "increase or change any staffing
requirements." As the circuit court noted in vacating the award, the
enforcement of the award would, in fact, authorize other-sex supervi-
sion inasmuch as a significant portion of a physical education teach-
er's responsibilities include locker room supervision. The arbitrator's
decision, thus, seems to have impliedly ordered the school district to
recreate and restaff the position of teacher's aide to accommodate the
grievant and other physical education teachers who could not be
denied positions requiring locker room supervision of students of the
opposite gender.

[13] See § 2a(4), ante, p 154, for the text of that contractual provision.
Additionally, inasmuch as that approach was an attempt to apply the
bona fide occupational qualification provision of the Michigan Civil
Rights Act, MCL 37.2208; MSA 3.548(208), it was contrary to the
express agreement of the parties to withhold disputes concerning the
preamble from arbitration and to their express agreement to limit
arbitral authority to interpret "State and/or Federal Law." That
provision of the Michigan Civil Rights Act states in part:

An employer may have a bona fide occupational qualification
on the basis of religion, national origin, sex, age, or marital
status, height and weight without obtaining prior exemption
from the commission, provided that an employer who does not
obtain an exemption shall have the burden of establishing that
the qualification is reasonably necessary to the normal opera-
tion of the business. [Id.]

supervision as a significant responsibility,[14] was contrary to that express contractual provision which specifically limited arbitral authority to employ such an approach.[15]

The arbitrator, in his written decision, did not determine that the school district's past action of employing teachers' aides to assist in discharging the locker room supervision responsibilities of physical education teachers had, by accretion, modified the original collective bargaining agreement and become a part of the agreement binding the school district from discontinuing the use of such aides. We note, moreover, that, again, by express contractual agreement, the arbitrator was prohibited from making such a determination.[16]

The Court of Appeals reasoned that the award in the instant case was, at least in part, based upon the arbitrator's independent interpretation of the seniority and recall provisions of the agreement and, accordingly, that the arbitrator's opinion "drew its essence from the contract and was

[14] The arbitrator acknowledged that locker room supervision consumes approximately twenty-five percent of a physical education teacher's time and that it has always been a significant responsibility of the position.

[15] Whether that provision is viewed as a specific limitation upon arbitral authority or a specific reservation of management rights, the arbitrator exceeded his authority in disregarding the contractual agreement reflected in it. The arbitrator's assertion that "many arbitrators" employ such an approach does not support disregarding the specific and unambiguous provision of the contract prohibiting him from employing such an approach. Inasmuch as that approach was an attempt to apply Michigan statutory law, it was contrary to at least two other express provisions of the arbitration contract. See § 2a(7)(b), and § N, *ante,* p 155, and n 13.

[16] The parties expressly provided that their agreement could not be modified except by written agreement. See Article IX, A, *ante,* p 155, for the text of that provision. In the absence of such agreement, and pursuant to generally applicable principles of contract law, modifications can occur by virtue of prior or subsequent conduct. Cf. *Torrington Co v Metal Products Workers Union Local 1645,* 362 F2d 677 (CA 2, 1966). See Jones, *The name of the game is decision—Some reflections on "arbitrability" and "authority" in labor arbitration,* 46 Tex L R 865, 873 (1968).

not based on the arbitrator's own brand of personal justice." We are persuaded, however, that the award was dependent upon the arbitrator's interpretation of § F of the preamble and his disregard for the parties' specific agreement limiting arbitral authority in the management rights reservation provisions. We agree that, ordinarily, unless otherwise expressly agreed, an arbitrator has great latitude in the sources he may rely upon in resolving disputes concerning the appropriate interpretation of specific contractual provisions, including aspirations expressed in a preamble, the past practices of the parties, and, in some circumstances, the reasonableness of policy decisions within the management rights reserved to an employer. That the parties to an arbitration agreement are free to circumscribe and limit arbitral jurisdiction and authority, however, is beyond question, and such contractual terms and conditions are valid and entitled to judicial enforcement.[17]

In vacating the arbitral award in the present case, the circuit court did not substitute its opinion on the merits of the grievance for that of the arbitrator. The court was careful to appropriately limit its review to whether the arbitrator had exceeded his contractual jurisdiction and authority. In the present case, that jurisdiction and authority was expressly and specifically limited, and the award was dependent upon the arbitrator's disregard of those specific terms and conditions which were reflected in the provisions of the arbitration agreement itself, and by reference to them.

---

[17] See n 6. The parties' agreement to remove disputes concerning civil rights from their arbitration agreement is enforceable and understandable. While arbitrators may possess superior insight in such subjects as "the law of the shop," they may lack the training and expertise to apply "the law of the land." See n 11, and cases cited therein.

In this case, the arbitrator clearly exceeded his contractual authority; the award is unenforceable and was properly vacated by the circuit court.

B

The issue whether the school district waived its right to challenge the award in the present case, as having been granted in excess of the arbitrator's jurisdiction and authority, was not before the circuit court; the association failed to assert that defense during the proceedings instituted by the school district to set aside the award. Accordingly, that issue was not properly before the Court of Appeals.[18] Because the Court of Appeals decision addressed that issue, even though it had not been raised in the trial court, we discuss it briefly.

A party who voluntarily agrees to submit a specific grievance to arbitration may be precluded from later challenging the "arbitrability" of that grievance. See, e.g., *American Motorists Ins Co v Llanes,* 396 Mich 113; 240 NW2d 203 (1976).[19] It does not follow, however, that by voluntarily submitting to arbitrate a specific grievance a party waives his rights completely to later challenge the arbitral award on the ground that the arbitrator exceeded his authority. The most obvious example is when an arbitral award reaches beyond the

[18] The association's failure to assert that defense in the circuit court, either by way of affirmative defense or otherwise, precluded judicial review of the issue. See *Pryber v Marriott Corp,* 98 Mich App 50; 296 NW2d 597 (1980), aff'd 411 Mich 887 (1981); *Hudson v Maher,* 55 Mich App 90, 93; 222 NW2d 47 (1974).

[19] See, generally, Anno: *Participation in arbitration proceedings as waiver of objections to arbitrability,* 33 ALR3d 1242, 1244. But cf. *Silverman v Benmor Coats, Inc,* 61 NY2d 299; 461 NE2d 1261 (1984); *Firestone Tire & Rubber Co v United Rubber Workers,* 168 Cal App 2d 444; 335 P2d 990 (1959); *Gulf Oil Corp v Guidry,* 160 Tex 139; 327 SW2d 406 (1959). Cf. also *Electrical Workers Union v Collins Radio Co,* 317 F2d 214 (CA 5, 1963).

boundaries of the "submission."[20] That a particular grievance is arbitrable "on its face" does not empower an arbitrator to disregard the terms and conditions of his commission; nor does it preclude a party to the arbitration contract from having that contractual agreement enforced in accordance with those specific terms and conditions.

The policy of this state is in favor of arbitration. While questions of "arbitrability" in the first instance are appropriate for judicial resolution unless otherwise agreed,[21] a court's function in this regard is limited:

> [W]hile the question whether a dispute is arbitrable is for the court, the judicial inquiry "is confined to ascertaining whether the party seeking arbitration is making a *claim which on its face* is governed by the contract." Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.
>
> * * *
>
> "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the *arbitration clause* is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." . . . Absent an *"express provision* excluding [a] particular grievance from arbitration" or the *"most forceful evidence* of a pur-

[20] See, e.g., *Electrical Workers Union v Magnavox Co,* 286 F2d 465 (CA 6, 1961); *Retail Store Employees Union v Sav-On Groceries,* 508 F2d 500 (CA 10, 1975). See also St. Antoine, *supra,* 75 Mich L R 1151, in which the author offers the following example:

> For example, an arbitrator who is empowered to decide whether an employer has unreasonably increased assembly-line quotas is not authorized to order the parties to negotiate for engineering studies to guide further quota disputes. [Citing *Magnavox Co, supra.*]

[21] Parties may agree to arbitrate the contractual issue of arbitrability.

pose to exclude the claim," . . . the matter should go to arbitration. [*Kaleva, supra,* 591-592 (quoting *United Steelworkers of America v American Mfg Co,* 363 US 564, 568; 80 S Ct 1343; 4 L Ed 2d 1403 [1960]).]

It follows that an order compelling arbitration may not be denied by accepting an employer's assertion that a perfect contractual defense to the grievance exists. See, e.g., *Butte Miners' Union v Anaconda Co,* 159 F Supp 431 (D Mont, 1958) (discussed in *Firestone Tire & Rubber Co v United Rubber Workers,* 168 Cal App 2d 444; 335 P2d 990 [1959]).[22] The issue in such cases is not whether the grievance is meritorious, but whether the party is entitled to have the issue determined in the forum designated in the agreement.[23]

In the present case, the school district has not contested the arbitrability of the grievance on its

---

[22] It also follows that a party may not achieve, in effect, the arbitration of a dispute categorically excluded from arbitration by narrowly contriving a grievance which is, on its face, within the arbitration agreement. See *Collins Radio Co,* n 19 *supra,* 219.

[23] The typical arbitration contract in a collective bargaining agreement does not restrict arbitration to meritorious grievances. In *Firestone Tire & Rubber Co, supra,* the court quoted the following passage from Cox, *Current problems in the law of grievance arbitration,* 30 Rocky Mtn L R 247, 261 (1958), to express this point:

> [The typical arbitration clause] do[es] not restrict its scope to meritorious disputes or two-sided disputes, still less are they limited to disputes which a judge will consider two-sided. Frivolous cases are often taken, and are expected to be taken, to arbitration. What one man considers frivolous another may find meritorious, and it is common knowledge in industrial relations circles that grievance arbitration often serves as a safety valve for troublesome complaints. Under these circumstances it seems proper to read the typical arbitration clause as a promise to arbitrate every claim, meritorious or frivolous, which the complainant bases upon the contract. The objection that equity will not order a party to do a useless act is outweighed by the cathartic value of arbitrating even a frivolous grievance and by the dangers of excessive judicial intervention.

face in the first instance. The school district emphasizes that the submitted grievance did not implicate the preamble: nor did it require the arbitrator to determine the reasonableness and necessity of policy decisions within the scope of management rights specifically reserved, and to order, by implication, the school district to increase its staff.[24]

In exceeding his authority, the arbitrator went beyond the specific provisions alleged to have been violated by the grievant. It could not have been "said with positive assurance," however, "that the arbitration clause [was] not susceptible of an interpretation that cover[ed] the asserted dispute." *Kaleva, supra,* 591-592 (quoting *American Mfg Co, supra,* 568). The school district did not waive its right to meaningful judicial review, however limited, by not anticipating that the arbitrator would disregard express provisions of the arbitration contract circumscribing his jurisdiction and authority.

The school district did not waive its legal right to have the arbitration agreement between itself and the association enforced in accordance with its terms by not challenging the arbitrability of the grievance in the first instance. Whether the grievance was arbitrable on its face is entirely distinguishable from the issue whether the award was properly vacated on the ground asserted by the school district.

IV

In conclusion we note that, while the analysis of

[24] The grievance stated:

> On or about August 21, 1980 a vacancy arose for which I was qualified. This position was not offered to me in accordance with Article II, Section 3, Paragraph C[3][e] (Page 13).

the dissent is arguably not illogical to the extent
that it expands upon the Court of Appeals reason-
ing, we are persuaded that taken to its logical
conclusion that analysis would defeat the clearly
expressed intent of the parties concerning the
scope and terms of their arbitration agreement.

The dissent's conclusion that the arbitrator was
"required" to construe § F of the preamble (which
reflects the "mutual pledge" of "[t]he District and
the Association . . . to continue to recognize the
full constitutional and civil rights of all teachers")
*notwithstanding* the parties' clearly expressed in-
tent not to entrust the appropriate interpretation
of that provision to final and binding arbitration,
is problematic. As noted by the dissent, the griev-
ance *did not* assert "sex discrimination"; *nor* did it
specifically challenge the school district's authority
to establish gender as a bona fide occupational
qualification for the position of girls' physical edu-
cation teacher. The grievance was narrowly con-
fined to the seniority and recall provisions, and, as
the dissent also notes, had it asserted "sex discrim-
ination" it would not have been arbitrable, be-
cause disputes concerning such matters were ex-
pressly excepted from the arbitration agreement.
The dissent fails to acknowledge, however, that
the answer filed in response to that narrowly
confined grievance was equally confined; the school
district did not defend by asserting that it was
entitled to make gender a bona fide occupational
qualification any more than the grievance con-
tended otherwise. To the extent that the grievance
did not make such an assertion, it was unneces-
sary for the school district to defend against it. In
deciding that narrowly confined and, therefore,
arbitrable grievance, the arbitrator was not re-
quired to interpret § F of the preamble and to
decide the bona fide occupational qualification

question which all agree would not have been arbitrable if implicated in the grievance.

Nevertheless, the arbitrator's award was dependent upon his conclusion that sex could not be made a qualification in this case because the school district failed to shoulder its burden of establishing the "reasonableness and necessity" of that qualification.[25] In our judgment, in so concluding, the arbitrator exceeded the narrow confines of the submission which rendered the grievance arbitrable in the first instance. To agree with the dissent that the arbitrator was actually "required" to do so would nullify the parties' express agreement excepting such matters from their arbitration contract. Pursuant to that agreement, *neither* party could compel the other to submit to final and binding arbitration concerning such matters.

Notwithstanding whether "all would agree that race, creed, religion, color, or national origin should not be a job qualification in a public school," *post,* p 173, the parties agreed, by express provision in their arbitration contract, to exclude such matters from those subject to final and binding arbitration. Without discussing whether "[s]ex or age may in some cases appropriately be made a job qualification," *post,* p 174, a question entirely irrelevant to the disposition of this case, we agree and it has not been disputed that "[w]hether a school district may properly [do so] in a particular case is a question [at least in part] of the construction of the agreement." The proper forum in which to resolve such a constructional issue, however, is an entirely separate matter which, in the present

[25] The arbitrator's analysis in this regard seems to have been an attempt to apply the bona fide occupational qualification provision of the Michigan Civil Rights Act, MCL 37.2208; MSA 3.548(208), which imposes upon an employer "the burden of establishing that the qualification is *reasonably necessary* to the normal operation of the business." *Id.* (Emphasis added.) See n 13.

case, was expressly agreed upon in the parties' arbitration agreement.

The discussion set forth in parts IV and V of the dissenting opinion is, for the most part, misplaced. With regard to the discussion in part IV, we express no opinion concerning the soundness of any of the specific provisions of the arbitration agreement, or the construction of the collective bargaining agreement as a whole. Nor do we comment on the merits of the arbitral award granted in this case. Respecting part V, we note that the arbitrator's award has not been challenged as "unreasonable," or as "unsupported by principles of contract construction [or] the law of the shop." Finally, we express no opinion concerning the dissent's comment with regard to the hypothetical possibility, or likelihood, of another arbitral decision in this case except to note that that question is entirely irrelevant to our decision.

We reverse the decision of the Court of Appeals, and reinstate the circuit court's decision vacating the award on the ground that the arbitrator clearly exceeded his authority which was expressly and unambiguously circumscribed in the arbitration contract.

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, BOYLE, and ARCHER, JJ., concurred with RILEY, J.

LEVIN, J. The question presented is not whether a male physical education teacher should or will supervise a high school girls' locker and shower room. However this appeal were to be decided, one can be assured that the supervisor of the girls' locker and shower room will be a female.

Enforcement of the school district's decision to include locker and shower room supervision as a duty of a physical education teacher and a qualifi-

cation of the job would—because quite obviously a
male cannot appropriately supervise a girls' locker
or shower room—deprive Larry Grinder, a male
teacher, of the job to which, all concede, he other-
wise would be entitled under the seniority clause
of the collective bargaining agreement. Conversely,
failure to enforce the school district's decision
would most likely mean that the school district
would be obliged to provide female supervision of
the locker and shower room.

The arbitration award upholding Grinder's
grievance states that he "must be permitted" to
exercise his seniority rights without regard to sex.
Because Grinder could not appropriately supervise
the girls' locker and shower room, the award in
effect means that the school district could not
make locker and shower room supervision a duty
and qualification of the job, when to do so would
deprive a teacher of a job to which he would
otherwise be entitled under the seniority clause.

The question presented is whether the arbitrator
misunderstood or exceeded his authority in decid-
ing that the seniority clause of the collective bar-
gaining agreement required that the position of
physical education teacher be assigned without
regard to the sex of the teacher, although this in
effect rendered unenforceable, in the case of a
male teacher, the school district's decision to in-
clude locker and shower room supervision as a
duty and qualification of the job. I would hold that
the arbitrator did not exceed his authority.

I

The circuit judge set aside the award on the
ground that the arbitrator exceeded his authority
in relying, in reaching his decision, on the state-
ment in the preamble of the collective bargaining

agreement that "[t]he provisions of this Agreement shall be applied without regard to race, creed, religion, color, *sex,* age or national origin." (Emphasis supplied.)

The Court of Appeals reversed, stating that "an arbitrator is justified in taking the parties' recitals, such as are contained in the preamble in the present case, into consideration to determine the parties' intentions."[1] The Court also said that the school district's reliance on the provision of the collective bargaining agreement stating that "grievances based on" the "preamble shall not proceed past step 5 of the grievance procedure"— which means that grievances concerning the preamble are not arbitrable—"[was] misplaced" because the grievance was based on the seniority clause and "was not based on the preamble." The Court also rejected the school district's argument that the arbitrator exceeded his authority by failing to give full recognition to the management rights clause of the collective bargaining agreement, stating that "[i]n finding that the [school district] was not empowered by the management rights provision to make gender a qualification for the job at issue, the arbitrator was merely interpreting the contract, and thus acting within his authority." I agree with the analysis of the Court of Appeals and would affirm.

II

The collective bargaining agreement provided that if a teacher resigns, the position shall be awarded to "the next available teacher on the Seniority List who *qualifies* for the vacancy." (Em-

---

[1] *Port Huron Area School Dist v Port Huron Ed Ass'n,* unpublished opinion per curiam of the Court of Appeals, decided September 9, 1983 (Docket No. 63636).

phasis supplied.) Grinder filed a grievance asserting that a vacancy arose for which he was qualified, but the position was not offered to him although he was the next available teacher on the seniority list. The school district responded that Grinder did not meet the qualifications required to fill the position because "[o]ne of the qualifications used by the [district] during the placement and staffing process was that a teacher who teaches girls' physical education classes must be a female instructor in order to provide locker room supervision."

The arbitrator noted the seniority clause of the collective bargaining agreement and the language of the preamble. He concluded that the violation of the seniority clause and "of the Preamble is clear and the competing reference to the use of the management rights clause" was not persuasive.

The management rights clause provided that the school district "retains all rights, power and authority exercised or had by it prior to the date hereof, *except as specifically limited by express provisions of this Agreement and under [the public employees relations act].*"[2] (Emphasis supplied.) The school district claimed that it had retained under the management rights clause the right to establish qualifications for the job of physical education teacher. Although it had in the past provided for locker room supervision by aides or teachers of the same sex as the students, and teachers then could have qualified as physical education instructors without regard to sex, the school district claimed that it had retained the right to include as a qualification for the job that a physical education teacher be of the same sex as the students so that the teacher could supervise the locker and shower rooms.

---

[2] MCL 423.201; MSA 17.455(1).

In upholding the grievance, the arbitrator said that locker room supervision had always been one of the responsibilities of a physical education teacher and part of the job, with the exception of the use of aides for one year. It had not, however, "been *applied* as a sex qualification up to this point only because it had been possible to arrange assignments in the past so that locker room supervision was done by same-sex teachers." (Emphasis supplied.)

The arbitrator said that the "use of sex in the application" of the seniority provision "is not authorized" and—referencing the management rights clause—is "specifically limited by express provisions of this agreement," namely, the provision of the preamble which "forbids use of sex in applying provisions of the agreement." He said that the school district's "power under the management rights clause to establish sex as a bona fide occupational requirement is juxtaposed against the clear limitations expressed in the recall and nondiscrimination provisions. Under these circumstances, especially considering the traditional importance any union places on seniority protection, the District has some affirmative burden to persuade the arbitrator of the operational reasonableness and necessity for its action."

The arbitrator said that while "making sex a bona fide occupational requirement" might "be desirable and to not do so might be inconvenient," "in the face of such clear and express contractual language limiting the District's rights and in the absence of compelling reasons to the contrary the conclusion must be made that the contract has been violated."

The arbitrator rejected the school district's claim that locker and shower room responsibility is a significant part of the teachers' total responsi-

bility, saying that while such responsibility consumes twenty-five percent of the class period, "it is difficult to conclude that the time involved remotely is representative of the educational content involved in the other seventy-five percent."

The arbitrator added that the award does not authorize other-sex supervision of locker and shower rooms, but rather provides that in "the fact situation presented sex cannot be used as an occupational requirement here."

III

The opinion of the Court reverses the judgment of the Court of Appeals and reinstates the circuit court's decision vacating the award on the ground that the arbitrator, in relying in construing the collective bargaining agreement on the language of the preamble requiring that the provisions of the agreement be applied without regard to sex, exceeded his authority because the agreement expressly provided that a grievance concerning a violation of the preamble was not subject to arbitration.

Grinder's grievance did not, however, "concern" a violation of the language of the preamble requiring that the agreement be applied without regard to sex. His grievance concerned an asserted violation of the seniority clause of the agreement.

The question whether Grinder's seniority rights were violated depends on whether he was "qualif[ied] for the vacancy." Whether he was qualified or not depends in turn on whether the school district retained the right under the management rights clause to establish sex as a job qualification. The arbitrator, in construing the contract, decided that the school district did not retain the right to establish sex as a job qualifica-

tion because the school district's rights under the management rights clause were limited by the words, "except as specifically limited by express provisions of this Agreement," and the preamble, requiring that the provisions of the agreement shall be applied without regard to sex, was a specific limitation by express provision of the agreement.

Because the preamble is a specific limitation by express provision of the agreement, the arbitrator did not exceed his authority in considering the language of the preamble—indeed he was required to do so—in deciding the correct construction of the agreement. Although a grievance could not be based on the preamble, it was nonetheless a specific limitation to be considered in the construction of the agreement.

If the school district had made race, creed, religion, color, or national origin a qualification for becoming a physical education teacher and the arbitrator had, in upholding a grievance on the basis of the seniority clause, relied on the language of the preamble stating that "[t]he Provisions of this Agreement shall be applied without regard to race, creed, religion, color, sex, age, or national origin" in deciding that the school district could not do so, it would I think be clear—because all would agree that race, creed, religion, color, or national origin should not be a job qualification in a public school—that reliance on the language of the preamble in construing the agreement, where the grievance was not based on the preamble, was entirely proper.

If Grinder had filed a grievance asserting sex discrimination or discrimination on the basis of race, creed, religion, color, age, or national origin, the grievance could not have been taken beyond Step 5 and hence would not have been arbitrable.

In claiming that the seniority provisions of the agreement had been violated, Grinder did not assert sex discrimination. It was rather the school district that defended against his grievance on the basis that it had a right to establish sex as a job qualification. The question whether it did or did not have the right to establish sex as a job qualification under the circumstances of the instant case was a question concerning the construction of the agreement and not a question of arbitral authority; the preamble—being a specific limitation in the agreement—was properly considered in deciding the correct construction without regard to whether a grievance could be based on the preamble.

Sex or age may in some cases appropriately be made a job qualification. Whether a school district may properly make sex a job qualification in a particular case is a question of the construction of the agreement. On that question, the limitation in the agreement requiring that the provisions of the agreement shall be applied without regard to sex was properly, indeed was, required to be, considered by the arbitrator in construing the agreement. The arbitrator did not exceed his authority in deciding, in partial reliance on the preamble, that the correct construction of the agreement was that the school district could not make sex a job qualification where to enforce a same-sex limitation would deprive a male teacher of the job he would otherwise be entitled under the seniority clause of the agreement, the grievance having been based on the seniority clause and not the preamble.

IV

The school district also contends that the arbi-

trator exceeded his authority in substituting his judgment for that of the school district concerning the reasonableness of the decision of the district to establish sex as a job qualification.

The collective bargaining agreement provided that the arbitrator "shall be limited to deciding whether the District has violated the specific Articles or Sections of this Agreement. It is agreed (except as to the provisions set forth in this Agreement) he shall have no power to change any practice, policy or rule of the District through substituting his judgment for that of the District as to the *reasonableness* of any practice, policy, rule or any action taken by the District." (Emphasis supplied.) The arbitrator stated, as previously noted, that "the District has some affirmative burden to persuade the arbitrator of the operational *reasonableness* and necessity for its action," and of "the absence of compelling *reasons* . . . ." (Emphasis supplied.) Earlier in his opinion he said that "many arbitrators seek to determine whether the disputed power is related in a *reasonable* manner to the orderly and efficient operation of the enterprise." (Emphasis supplied.)

The foregoing limitation on the power of the arbitrator, relied on by the school district, by its terms excepts "the provisions set forth" in the collective bargaining agreement. The foregoing limitation thus does not preclude the arbitrator from deciding—on the contrary he is obliged to decide—"whether the District has violated the specific Articles or Sections of this Agreement."

The article or section of the collective bargaining agreement invoked by Grinder was the seniority clause. The seniority clause is a "specific" article or section of the agreement. The "provisions set forth" in the seniority clause were "ex-

cept[ed]" from the foregoing limitation on the authority of the arbitrator.

Grinder's rights under the seniority clause and the school district's prerogatives under the management rights clause were in conflict. The resolution of that conflict required a construction of the collective bargaining agreement read as a whole.

It is not surprising that the arbitrator concluded that the collective bargaining agreement, read as a whole, did not confer on the school district an unbridled power to establish the duties and qualifications of a job. If the agreement were construed as conferring on the school district the power under the management rights clause to establish the duties and qualifications of a job without regard to "reason," "reasonableness," or any standard or limitation, then the school district could at will vary and change, as each job opening arose, the criteria for each job, and the seniority clause would then be considerably reduced in importance if effectual at all.

Nor is it surprising that the arbitrator concluded that read as a whole—including in that reading the preamble barring consideration of sex —the agreement did not confer on the school district an unbridled power to establish sex as a job qualification.

V

In deciding whether, reading the agreement as a whole, the school district properly established sex as a job qualification, the arbitrator necessarily considered the relative importance of the competing rights and prerogatives, and made a judgment based on reason. It does not appear that the arbitrator's decision, although he considered what was

"reasonable" in his assessment of reason, was the result of a misapprehension by him of his powers.

The arbitrator concluded that although the school district could lay off teachers and reduce staff as an austerity measure, it could not, in light of what the arbitrator saw as the relative unimportance of locker and shower room supervision in comparison to the educational responsibility of a physical education teacher, consistent with the "traditional importance" of the seniority clause, establish sex as a job qualification. That decision was not in "manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop . . . ."[3]

The arbitrator did not require the school district to increase or change the staffing requirements. He required that Grinder be assigned as a physical education teacher. How, or if at all, the girls' locker or shower room was supervised was not covered by his award. A senior student or students, a parent volunteer or volunteers, classroom teachers other than physical education teachers or

[3] Bearing this in mind and perceiving that the Supreme Court's announced standards in reviewing commercial awards call for the exercise of judicial restraint, we must conclude that such a philosophy of restricted review compels even less judicial interference in matters arising from labor arbitration. At the very least this means that the interpretation of labor arbitrators must not be disturbed so long as they are not in "manifest disregard" of the law, and that "whether the arbitrators misconstrued a contract" does not open the award to judicial review.

Accordingly, we hold that a labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award. [*Ludwig Honold Mfg Co v Fletcher*, 405 F2d 1123, 1128 (CA 3, 1969).]

administrators might have assumed or shared this responsibility. Then again it might have been or become necessary or advisable to hire part-time or other assistance, but that would be because the school district found that to be the preferable solution. An arbitrator is not necessarily precluded from making an award because one side or another of the controversy might feel constrained thereafter to incur expenditures that the arbitrator could not order.

In reversing the decision of the Court of Appeals and affirming the circuit court's decision vacating the arbitrator's award, the majority acknowledges that "[t]here is no contention, in the present case, that the merits of the award here in question are subject to review."[4] The majority thus does not preclude another arbitral decision in which the arbitrator avoids reference to the preamble, "reasonableness," and other expressions viewed by the majority as indicating that the arbitrator exceeded his contractual authority.

I would affirm the decision of the Court of Appeals.

---

[4] *Ante,* p 151.