# STATE OF MICHIGAN

# COURT OF APPEALS

---

VILLAGE OF OXFORD,

       Plaintiff-Appellant,

v

JAMIE LOVELY,

       Defendant-Appellee.

UNPUBLISHED
April 13, 2017

No. 331002
Oakland Circuit Court
LC No. 2015-145570-CZ

---

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the order of the trial court granting defendant's motion to confirm an arbitration award. The arbitration was conducted pursuant to a Collective Bargaining Agreement (CBA) entered into between plaintiff and Michigan Council No. 25, American Federation of State, County and Municipal Employees, AFL-CIO, and its Local Union No. 2720, Chapter of Oxford (hereafter together, the union) and resulted in a decision that in part reinstated defendant's employment with plaintiff. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The arbitration decision at issue summarized the facts involved in the underlying employment dispute as follows:

> [On] July 28, 2010, grievant, Jamie Lovely, applied for and was granted leave under ARTICLE XXI. (E-13)
>
> He remained off of work with benefits provided in accordance with ARTICLE XXI, INSURANCE - SECTION D- Short and Long Term Disability Insurance. (Exhibit J-1)
>
> > "An employee receiving disability income from the benefits described herein only shall continue to accrue seniority during such period. An employee receiving disability income from benefits described herein shall continue to be provided with medical insurance including dental and optical coverage, life insurance, and longevity pay; and the Employer shall continue to contribute to the retirement program as if the employee had

-1-

continued working. All other benefits, including uniform allowance, leave days, and vacation time shall be continued if the disability is less than thirty (30) days, but shall not accrue or be continued thereafter."

[On] April 22, 2012, a letter was sent to Mr. Lovely which stated that the "Village Council at their May 22, 2012, meeting approved the elimination of a Laborer I position due to funding constraints. You will continue to be eligible for employment and benefits as provided for in the AFSCME collective bargaining agreement." (Exhibit J-3)

[From] January 24, 2013 to January 24, 2014, Mr. Lovely was placed on a one year unpaid Leave of Absence in accordance with Contract ARTICLE XXI, SECTION D - Short and Long Term Disability Insurance, paragraph 3.

[On] February 14, 2013, Standard Insurance sent a letter to the Village of Oxford stating that LTD benefits for Mr. Lovely were terminated as of January 24, 2013, because his medical condition was identified as one that is limited to payment for 24 months under the terms of the Group Policy. (Exhibit J-8)

[On] July 17, 2013, Mr. Lovely provided a Doctor's release to return with restrictions. (Exhibit J-10)

[On] July 26, 2013, the Union filed a grievance on Mr. Lovely's behalf which cited ARTICLE XVIII, LEAVES OF ABSENCE- SECTION D, and requested the grievant be restored to a Laborer position and be made whole. (Exhibit J-2)

[On] September 19, 2013, the Step 3 response denied the grievance citing ARTICLE XXI, INSURANCE- SECTION D of the Labor Agreement:

> "When an employee receives his last check for leave time from the Employer, and his last check from the Insurance Company, he will be placed on leave of absence without pay or benefits, for a period not to exceed twelve (12) months. If at the end of the unpaid leave of absence the employee is still unable to return to work, his employment shall be terminated and his position filled if the Employer chooses to do so. The employee shall be eligible for re-employment within the time frame herein above described provided he has completely recovered and has a written detailed doctor's statement to that effect, subject to Employer physical examination and approval, and provided that that a vacancy exists." Exhibit J-2) [sic]

[On] January 13, 2014, Mr. Lovely applied again for reinstatement with a Doctor's release without restrictions. (Exhibit J-11)

-2-

[On] January 15, 2014, the Employer sent a letter to Mr. Lovely which acknowledged receipt of his return to work Doctor's note without restrictions and which stated that there was no vacancy to which he could return because the Village eliminated the vacant position on June 30, 2012. (Exhibit J-9)

The union filed two grievances on behalf of defendant related to plaintiff's denials of his requests to return to work: one in July 2013 after defendant presented a doctor's note stating that he could return to work with restrictions, and again in January 2014 after defendant presented a doctor's note fully clearing him to return to work without restrictions. These grievances specifically asserted the violation of Article XVIII, entitled "LEAVES OF ABSENCE," although both grievances also indicated that the claim was not limited to a violation of that specific article. Plaintiff denied both grievances, ultimately taking the position that defendant was not entitled to reinstatement because his position had been eliminated in 2012. Defendant requested arbitration of the denial of the grievances under the CBA, and an arbitration hearing was conducted in September 2014. The arbitrator issued her award on January 28, 2015, holding essentially that defendant was entitled under the CBA to maintain his seniority while on long-term disability, and that although plaintiff could eliminate *a* position under the CBA, it could not eliminate *defendant's* position while employees with lesser seniority remained in identical positions.

Plaintiff filed suit in the trial court seeking to vacate the arbitration award and to remand for further arbitration. As discussed in greater detail later in this opinion, the essence of plaintiff's argument below was, as it is on appeal, that the arbitrator exceeded the scope of her powers by holding that plaintiff had violated provisions of the CBA other than the one specified in defendant's filed grievances. Plaintiff filed a motion to vacate the arbitration award, as well as a motion for summary disposition. Following a motion hearing, the trial court denied plaintiff's motion for summary disposition,[1] holding that the arbitrator had not exceeded the scope of her powers. The trial court subsequently granted defendant's motion to confirm the arbitration award. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo issues regarding a trial court's order enforcing an arbitration award. *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004). An arbitration award should be set aside only if a reviewing court finds that a "legal error that is evident without scrutiny of intermediate mental indicia [of the arbitrator]" has been made and is discernable from the face of the award or the arbitrator's stated reasons for the decision. *Id*. at 555, quoting *DAIEE v Gavin*, 416 Mich 407, 434; 331 NW2d 418 (1982). Factual error or lack of a clear record is not an impediment to confirmation of an arbitration award. *Id*.

---

[1] Although the record does not make this explicit, it appears that the trial court also effectively denied plaintiff's motion to vacate the arbitration award, relief that plaintiff also had requested in its motion for summary disposition and in its complaint.

III. ANALYSIS

Plaintiff argues that the trial court erred by confirming the arbitration award because the arbitrator exceeded her powers. We disagree. MCR 3.602(J)(2)(c) states that a reviewing court shall, on motion of a party, vacate an arbitration award if "the arbitrator exceeded his or her powers." Arbitrators exceed their powers when they "act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Gavin*, 416 Mich at 434.

Plaintiff contends that the arbitrator exceeded her authority in this case by looking beyond the specific article and section of the CBA that was referenced in defendant's grievances. We disagree. Article VII, Section C of the CBA describes the jurisdiction of the arbitrator as limited to the "determination of grievances which involve an alleged violation of a specific Article and Section of this Agreement." However, this jurisdictional statement, by its language, refers to arbitrability. In other words, it essentially serves to include within the arbitrator's jurisdiction matters that fall within the CBA, while excluding from the arbitrator's jurisdiction matters that do not.

Neither party in this case argues that the subject matter at issue in defendant's grievances was not arbitrable, i.e., not within the arbitration clause or expressly exempted from arbitration by the terms of the contract. See *Huntington Woods v Ajax Paving Industries, Inc (After Remand)*, 196 Mich App 71, 74; 492 NW2d 463 (1992). Moreover, there is no question that the arbitrator indeed had jurisdiction over the subject matter of the grievances. The arbitrator's jurisdiction extends to grievances that "involve" an alleged violation of a specific article and section of the CBA. The CBA does not define the term "involve." *Merriam-Webster's Collegiate Dictionary* defines "involve" as meaning "to have within or as part of itself." See *Merriam-Webster's Collegiate Dictionary* (11th ed), p 660. Using this definition, defendant's grievances without question did "involve" a specific article and section of the CBA, and thus fell within the jurisdiction of the arbitrator.

Further, while Article VII, Section D of the CBA restricts the arbitrator from ruling on any matter not "specifically brought before him," it was plaintiff itself that "brought before" the arbitrator, in responding to defendant's claims, and in apparent recognition that a contract generally must be read as a whole, *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 52 n 11; 664 NW2d 776 (2003), matters relating to the very sections of the CBA that plaintiff now contends were outside of the arbitrator's authority to consider. The irony is not lost on us. In short, however, having brought before the arbitrator those matters relating to other sections of the CBA, plaintiff cannot now properly argue that Article VII, Section D restricts the arbitrator from ruling on them, or that the arbitrator's consideration of those matters somehow creates "a large hole in due process."

Article VII, Section D of the CBA also limits the powers of the arbitrator to deciding "whether [plaintiff] has violated the express Articles and Sections" of the CBA. We find noteworthy the use of the plural in this section of the CBA. That is, although under Article VI, Section A, a grievance must be "based upon an alleged violation of a specific Article and Section" of the CBA (and, as noted, jurisdiction is similarly described in Article VII, Section C), Article VII, Section D recognizes that once jurisdiction over a grievance is established, the

arbitrator's powers extend to deciding whether there were violations of the "Articles and Sections" of the CBA. It does not expressly limit the arbitrator's powers to determining only whether there was a violation of the specific article or section of the CBA expressly cited in the grievance at issue.

Plaintiff's reliance on *Port Huron Area School Dist v Port Huron Ed Ass'n*, 426 Mich 143; 393 NW2d 811 (1986), is misplaced. In *Port Huron*, the arbitrator specifically relied upon a provision of the contract that the contract itself expressly prohibited him from considering, and he made interpretations of state and federal law that the contract also expressly forbade him from making. *Id*. at 818-819. In fact, the *Port Huron* Court noted that absent such an express limitation on his authority, an arbitrator has "considerable latitude" in the resolution of labor disputes. *Id*. at 815. No such express limitation on the arbitrator's authority is found in the CBA at issue in this case.

Finally, we note that the arbitrator observed that, consistent with the manner in which both parties arbitrated the matter, "[s]everal sections of the [CBA] interact in this case to a greater or lesser degree." Ultimately, the arbitrator held that plaintiff violated the CBA by failing to return defendant to work as requested after a leave of absence, which was the issue brought before her by the grievances in dispute. For the reasons noted above, we conclude that the arbitrator acted within the jurisdiction and powers afforded to her by the CBA. We therefore hold that the trial court did not err by confirming the arbitration award and denying plaintiff's request to vacate the award pursuant to MCR 3.602(J)(2)(c).

Affirmed.

/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra