RANTA v EATON RAPIDS PUBLIC
SCHOOLS BOARD OF EDUCATION

Docket No. 258900. Submitted April 4, 2006, at Lansing. Decided June 6, 2006, at 9:15 a.m.

Adriana Ranta and other unionized teachers filed a charge with the State Tenure Commission (STC) alleging that the decision of their employer, the Eaton Rapids Public Schools Board of Education, to cap its contribution to employees' health insurance premiums constituted a demotion without just cause under the teacher tenure act (TTA), MCL 38.71 *et seq*. The hearing referee granted respondent's motion for summary disposition on the ground that the dispute was one involving contract, not tenure, and the STC therefore lacked jurisdiction. The STC reversed and remanded, ruling that because the issue was whether petitioners had been demoted, the claim was governed by the TTA, which gave the STC jurisdiction over the case. The Court of Appeals denied respondent's application for leave to appeal, and the Supreme Court remanded the case for consideration as on leave granted. 471 Mich 916 (2004).

The Court of Appeals *held*:

1. The STC erred in determining that the cap on health insurance benefits constituted a demotion. Petitioners all received salary increases for the school year in question, and respondent paid slightly higher insurance premiums than it had the previous year. The failure to satisfy an employee's reasonable expectation based on an employer's prior actions does not constitute a demotion.

2. The STC erred in determining that it had subject-matter jurisdiction. Because the dispute involves the respondent's unilateral implementation of a contract term relating to a mandatory subject of bargaining, it is a labor dispute governed by the Public Employment Relations Act, MCL 423.201 *et seq*., over which the Michigan Employment Relations Commission has exclusive jurisdiction.

Reversed and remanded for entry of an order of dismissal.

1. SCHOOLS — TEACHERS — LABOR DISPUTES — PUBLIC EMPLOYMENT RELATIONS ACT.

Disputes involving unilateral implementation of a contract term relating to a mandatory subject of bargaining between a teachers' union

and a school district are governed by the Public Employment Relations Act, which gives the Michigan Employment Relations Commission exclusive jurisdiction over such disputes (MCL 423.201 *et seq.*).

2. SCHOOLS — TEACHERS — LABOR DISPUTES — TEACHER TENURE ACT.

The teacher tenure act was not intended to cover labor disputes between school districts and teachers (MCL 38.71 *et seq.*).

*White, Schneider, Young & Chiodini, P.C.* (by *William F. Young*), for the petitioner.

*Thrun Law Firm, P.C.* (by *Donald J. Bonato* and *Roy H. Henley*), for the respondent.

Amicus Curiae:

*Brad A. Banasik* for the Michigan Association of School Boards.

Before: KELLY, P.J., and JANSEN and TALBOT, JJ.

PER CURIAM. This case is before us on remand from our Supreme Court, which, in lieu of granting leave to appeal, remanded it to us for consideration as on leave granted. *Ranta v Eaton Rapids Public Schools Bd of Ed,* 471 Mich 916 (2004). The Court has directed us "to pay particular attention to whether the State Tenure Commission [STC] had jurisdiction over this dispute. See, e.g., *Farrimond v Bd of Ed of East Jordan,* 138 Mich App 51[; 359 NW2d 245] (1984)." *Id.* We reverse and remand to the STC for entry of an order dismissing this case for lack of subject-matter jurisdiction.

## I. FACTS

This dispute arises from a breakdown in collective bargaining negotiations between respondent and petitioners' union representative, the Eaton Rapids Education Association (EREA). Petitioners are unionized

teachers employed by respondent. Anticipating the expiration of their collective bargaining agreement, respondent and the EREA began negotiations on a successor agreement. An unresolved element of these negotiations concerned payment of health insurance premiums. According to the existing contract, which covered the 2002-2003 school year, respondent was obligated to pay teachers' insurance premiums in full. On the issue of who would continue to bear this cost, the parties reached an impasse in negotiations, which respondent observed by resolution. Consequently, respondent unilaterally implemented its most recent bargaining proposal capping its obligation to pay health care premiums. Accordingly, if insurance premiums were to increase to exceed the capped amount, employees would bear the excess premium costs.

For the school year 2003-2004, insurance premiums increased and exceeded the capped amount. Pursuant to the unilaterally implemented term, respondent paid the capped amount and deducted the remaining balance from each employee's paycheck according to each employee's elected health plan. The capped amount was a few cents more than the amount respondent had paid the previous year. Petitioners' salaries were also greater in 2003-2004 than in 2002-2003.

The EREA subsequently filed a charge with the Michigan Employment Relations Commission (MERC), alleging unfair labor practices under the Public Employment Relations Act (PERA), MCL 423.201 *et seq*. The MERC case was settled when a successor collective bargaining agreement was reached.

As individuals, petitioners filed a charge with the STC asserting that respondent's cap on its contribution to health insurance premiums constituted a reduction in wages for the 2003-2004 school year, and that wage

reduction amounted to a demotion as that term is defined in the teacher tenure act (TTA), MCL 38.71 *et seq*. Petitioners further asserted that this demotion was without just cause. Respondent immediately sought summary disposition, arguing that petitioners were not demoted and that the STC lacked subject-matter jurisdiction because this was a labor dispute governed by PERA and subject to MERC's jurisdiction.

The hearing referee entered a decision and order granting respondent's motion, stating that the dispute involves "a contract issue, rather than a tenure issue." The hearing referee further stated, "The insurance to which appellants are entitled is a matter solely determined by the collective bargaining agreement and collective bargaining process." The hearing referee also determined that petitioners were not demoted because their salary was not reduced. The full STC reversed, stating:

> The issue raised in this case is whether appellants have been improperly demoted. Such claims traditionally arise under the [TTA]. . . . This Commission does not lack jurisdiction over appellants' claim.

It further ruled:

> The fact that a teacher's salary is not reduced does not necessarily establish that the teacher has not been demoted. The total compensation package must be considered in determining whether there has been a reduction equivalent to three days' compensation.

Accordingly, the STC remanded the matter to the hearing referee for a determination whether the statutory monetary threshold for demotion had been met and, if so, whether there was just cause for petitioners' demotion. This Court denied respondent's application for leave to appeal. *Ranta v Eaton Rapids Schools Bd of*

*Ed,* unpublished order of the Court of Appeals, entered July 19, 2004 (Docket No. 256108). We now consider this case on remand as on leave granted.

## II. ANALYSIS

Respondent contends that the STC erred in determining that the cap on health insurance benefits could be characterized as a demotion and that it has subject-matter jurisdiction over this dispute. We agree.

### A. STANDARD OF REVIEW

In reviewing the decisions of an administrative agency, a court may set aside that decision or order only if substantial rights of the petitioning appellant have been prejudiced "because the decision or order [was] . . . [in] violation of . . . a statute . . . [or] . . . [a]rbitrary, capricious or clearly an abuse or unwarranted exercise of discretion [or] . . . [a]ffected by other substantial and material error of law". MCL 24.306 . . . . The reviewing court may not substitute its judgment for that of the agency in the absence of fraud or jurisdictional defect. An agency's findings of fact are conclusive unless they are unsupported by substantial evidence. *Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96; 204 NW2d 218 (1973); *Murphy v Oakland County Dep't of Health,* 95 Mich App 337; 290 NW2d 139 (1980). Where a case has been submitted for decision upon an agreed-upon statement of facts, that statement must be taken as conclusive. The only question for the reviewing court then is whether the judgment was supported by the stipulated facts. *Kretzschmar v Rosasco,* 250 Mich 9; 229 NW 446 (1930). [*Farrimond, supra* at 56.]

### B. PERA AND THE TTA

Our Supreme Court has held that PERA is "the dominant law regulating public employee labor relations." *Rockwell v Crestwood School Dist Bd of Ed,* 393

Mich 616, 629; 227 NW2d 736 (1975). PERA "imposes a duty of collective bargaining on public employers, unions, and their agents." *St Clair Intermediate School Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 550; 581 NW2d 707 (1998). "Violations of § 10 of the PERA are deemed unfair labor practices under MCL 423.216 . . . remediable by the [MERC]." *St Clair, supra* at 550. Section 16 of PERA vests MERC with exclusive jurisdiction over unfair labor practices. *Id.*

Our Supreme Court held that the TTA, on the other hand, is designed to

> "maintain an adequate and competent teaching staff, free from political and personal arbitrary interference"; to promote "good order and the welfare of the State and of the school system by preventing removal of capable and experienced teachers at the personal whims of changing office holders"; and "to protect and improve State education by retaining in their positions teachers who are qualified and capable and who have demonstrated their fitness, and to prevent the dismissal of such teachers without just cause". [*Rockwell, supra* at 632, quoting *Rehberg v Ecorse School Dist No 11*, 330 Mich 541, 545; 48 NW2d 142 (1951) (footnote omitted).]

The STC is "vested with such powers as are necessary to carry out and enforce the provisions of [the TTA]." MCL 38.137. Our Supreme Court has warned that the concurrent exercise of jurisdiction by MERC and the STC "could result in competing claims and conflicting adjudications with untoward and costly delay." *Rockwell, supra* at 631.

In disputes between teachers and school boards similar to the dispute raised in this case, Michigan courts have addressed the applicability of and the interaction between PERA and the TTA. In *Rockwell,* a school board and a teachers' union were involved in a prolonged labor dispute. *Id.* at 626. After two teachers'

strikes, the teachers were ordered by the board to report for work or submit letters of resignation; if neither occurred, their employment would be deemed terminated. *Id.* at 626-627. Approximately 40 teachers returned to work, one submitted a letter of resignation, and the nearly 200 remaining were deemed to have terminated their employment. *Id.* at 627. The teachers' union, which had previously filed an unfair labor practice charge with MERC, sought hearings under PERA. *Id.* One issue before our Supreme Court concerned whether the PERA or the TTA procedures controlled. *Id.* at 624-625. In concluding that PERA controlled, the Court noted that it

> has consistently construed the PERA as the dominant law regulating public employee labor relations. . . .
>
> \*   \*   \*
>
> The teachers' tenure act was not intended, either in contemplation or design, to cover labor disputes between school boards and their employees. The 1937 Legislature in enacting the teachers' tenure act could not have anticipated collective bargaining or meant to provide for the resolution of labor relations disputes in public employment. This Court's observation in *Wayne County Civil Service Commission* [*v Bd of Supervisors,* 384 Mich 363, 372; 184 NW2d 201 (1971)] is pertinent: "In [no] instance could collective bargaining by public employees have been in the minds of the people, or of the [1937] legislators. The thought of strikes by public employees was unheard of. The right of collective bargaining, applicable at the time to private employment, was then in comparative infancy and portended no suggestion that it eventually might enter the realm of *public* employment." [*Id.* at 629-630.]

The Court also noted that PERA allows discipline for *collective* strike action, while disciplinary action subject to STC jurisdiction concerns *individual* teachers, point-

ing out that "[i]t should therefore be a rare case where the line separating disputes subject to the jurisdiction of the [STC] from those subject to the jurisdiction of the MERC will be unclear." *Id.* at 631. The Court further rejected the argument that due process required a hearing before the employer could terminate a teacher's employment, *id.* at 633, despite the fact that the TTA requires a prior hearing. See MCL 38.104. The Court determined that the hearing provided in PERA satisfied due process requirements. *Id.* at 633-635.

Several years later, our Supreme Court, in *Detroit Bd of Ed v Parks*, 417 Mich 268; 335 NW2d 641 (1983), addressed whether the TTA applied to a discharge that resulted from a tenured teacher's failure to pay agency service fees. Pursuant to a collectively bargained contract, the board of education was required to discharge employees who failed to pay. *Id.* at 271-273. The Court first determined that section 10(1)(c) of PERA permitted such an agreement. *Id.* at 275-278. The Court then rejected the argument that the "reasonable and just cause" standard for discharge in the TTA could "coexist" with section 10(1)(c) of PERA. *Id.* at 280. The Court noted that "[w]hen there is a conflict between PERA and another statute, PERA prevails, diminishing the conflicting statute *pro tanto.*" *Id.* Also at issue was whether the board of education was required to follow the TTA procedures in discharging the teacher. *Id.* at 282. The Court noted that the TTA procedures did not necessarily conflict with PERA, which did not contain any procedure for discharging a teacher for failure to pay agency service fees. *Id.* Nonetheless, the procedural aspects of the TTA were "irrelevant to a discharge for failing to pay agency fees" and the PERA procedures for adjudicating unfair labor practices satisfied due process requirements. *Id.* at 282-283. Further, the Court noted that if an employer improperly discharges an employee

for failure to pay agency fees, it commits an unfair labor practice and MERC has exclusive jurisdiction over unfair labor practices. *Id.* at 283.

*Farrimond, supra,* presented this Court with a factual situation more similar to the facts in this case. In *Farrimond,* a tenured teacher filed a petition before the Teacher Tenure Commission alleging that she was "demoted" under the TTA when a collective bargaining contract required the school board to place her on a salary schedule, which caused her to receive a half-step raise instead of a full step raise. *Id.* at 53-55. The commission determined that the petitioner was not demoted and, therefore, it "had no subject matter jurisdiction over the dispute, which was more properly resolved through collective-bargaining procedures." *Id.* at 56. Affirming the commission's ruling, this Court stated:

> [S]everal Tenure Commission decisions had held that terms of collective-bargaining agreements must be considered when determining whether a demotion has occurred. Where a collective-bargaining agreement allowed deviation from the applicable step of the salary schedule, retention at one level of a teacher with observed deficiencies resulted in no "reduction in compensation"; hence there was no demotion.
>
> In keeping with this interpretation, the commission has refused to rule on matters which, even though they involved a reduction of pay, were actually labor disputes or differences of opinion in contract interpretation.
>
> Considering the historical precedent for the commission's ruling that it did not have jurisdiction over what was, in the instant case, a labor dispute between appellant and appellee, we cannot say that the commission's order was arbitrary, capricious or an abuse or unwarranted exercise of its discretion. Nor can we say that its decision resulted from a misinterpretation of the statute. [*Id.* at 58-59 (citations omitted).]

The Court held that where the collective bargaining agreement required all teachers to be placed at a step level applicable to his or her experience, the petitioner's placement on the salary schedule involved a labor dispute and presented an issue of contract interpretation. *Id.* at 59-60. It further held that the petitioner's remedy was "properly provided for by the grievance procedures included in the collective-bargaining agreement" or a civil suit. *Id.* at 61.

### C. APPLICATION TO THIS CASE

#### 1. PROVISIONS RELIED ON BY THE PARTIES

Respondent asserts that this dispute is governed by PERA, which obligates a public employer to bargain collectively and authorizes the employer to enter into collective bargaining agreements with its employees' representatives. MCL 423.215(1) provides:

> A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising under the agreement, and the execution of a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or require the making of a concession.

The "mandatory subjects of bargaining" include health insurance benefits. *St Clair, supra* at 551.

After the parties have met in good faith and bargained over the mandatory subjects placed upon the bargaining table, they have satisfied their statutory duty.

\* \* \*

If the parties are not able to agree on the terms of a mandatory subject they are said to have reached an "impasse". Under [PERA][1] when good faith bargaining has reached an impasse, the employer may take unilateral action on an issue if that action is consistent with the terms of its final offer to the union. [*Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 55-56; 214 NW2d 803 (1974).]

Accordingly, respondent contends that this dispute, which arose from the unilaterally implemented contract term capping respondent's payment of health insurance premiums, is a labor dispute, subject to PERA.

Petitioners contend that because they are tenured teachers, the TTA applies and prohibits the discharge or demotion of a tenured teacher, except on reasonable and just cause. MCL 38.101. The TTA gives the STC jurisdiction to determine whether a discharge or demotion of a tenured teacher was done with such cause. MCL 38.104(5)(i), (m). According to MCL 38.74,

[t]he word "demote" means to reduce compensation for a particular school year by more than an amount equivalent to 3 days' compensation or to transfer to a position carrying a lower salary.

Accordingly, petitioners contend that requiring them to pay a portion of their health insurance premiums

---

[1] The original statutory reference was to the National Labor Relations Act, 29 USC 158, but both the context and subsequent holdings make clear that the statement is equally applicable to the analogons provision of PERA. See e.g., *Ottawa Co v Jaklinski*, 423 Mich 1, 33-34; 377 NW2d 668 (1985).

resulted in a reduction in the compensation for the school year by more than an amount equivalent to three days' compensation.

### 2. CAN RESPONDENT'S CAP ON ITS PAYMENT OF HEALTH INSURANCE PREMIUMS BE CONSIDERED A DEMOTION?

Respondent's cap on its payment of health insurance premiums did not result in petitioners being demoted as that term is used in the TTA. MCL 38.74. It is undisputed that, for the 2003-2004 school year, petitioners all received salary increases between approximately $2,000 and $2,500. It is further undisputed that respondent paid insurance premiums for each petitioner, during the 2003-2004 school year, in amounts slightly exceeding those paid the previous year. Petitioners' allegation of demotion stems from their having to pay for insurance premium increases to the extent they exceeded the capped amounts paid by respondent pursuant to contract. This does not constitute a "reduction" in their compensation, however, when their compensation was actually increased, not reduced. This is similar to *Farrimond,* in which the teacher's compensation was not reduced when her salary was increased by only a half-step rather than a full step pursuant to a contract term. *Id.* at 60-61. The failure to satisfy an employee's "reasonable expectation" based on an employer's prior actions does not amount to a demotion. *Id.* at 60. In this case, it is even more evident that there was no demotion when it was the health insurance provider, not the employer, who increased the cost of health care premiums. Thus, while respondent actually paid more in health care benefits from one year to the next, plaintiffs, as well as every other employee subject to the collective bargaining agreement, were still required to pay a portion of their premium due to the increased rates. This was not a demotion under MCL 38.74.

### 3. DOES THE STC HAVE JURISDICTION?

Moreover, regardless of whether petitioners are tenured teachers, brought individual claims before the STC, and characterized respondent's action as a demotion under the TTA, PERA is controlling in this dispute and, therefore, the STC does not have jurisdiction. As in *Rockwell,* no claim is or could be made that the change in health care benefits was "occasioned by any cause other than the labor dispute." *Rockwell, supra* at 632. After the EREA and respondent reached an impasse in negotiations on the mandatory bargaining subject of health care benefits, respondent, in compliance with PERA, unilaterally implemented its most recent bargaining proposal, capping its obligation to pay health care premiums. As in *Farrimond,* the contractual provision capping health care benefits applied to all employees represented by the EREA, not just petitioners and not just tenured teachers. This is simply not the "rare case where the line separating disputes subject to the jurisdiction of the . . . [STC] from those subject to the jurisdiction of the MERC . . . [is] unclear." *Id.* at 631. This case presents a matter governed by PERA. Because the STC's "jurisdiction and administrative expertise is limited to questions traditionally arising under the teachers' tenure act," it is without subject-matter jurisdiction over this dispute. *Id.* at 630. MERC alone has jurisdiction, *id.*, and this dispute was already raised before MERC and resolved by a successor agreement.

Petitioners assert that if the STC is denied jurisdiction over this dispute, they will be unlawfully precluded from pursuing and enforcing their rights under the TTA. We disagree. Our Supreme Court rejected this line of reasoning in *Parks*. Despite the fact that a tenured teacher was discharged, *Parks, supra* at 274, the Court

refused to graft the "reasonable and just cause" TTA standard onto PERA. *Id.* at 281. Similarly, the teacher in *Parks* was precluded from invoking TTA procedures when PERA controlled. *Id.* at 283. Accordingly, precedent dictates that the TTA's vesting of tenured teachers with certain statutory rights does not necessitate that these rights govern matters related to collective bargaining that are subject to PERA. Our conclusion is further supported by the general purpose of the TTA, which has been identified as protecting tenured teachers from removal for personal or political reasons without just cause, *Rockwell, supra* at 632, and not covering labor disputes between school boards and their employees, *id.* at 630.

Because the STC improperly exercised subject-matter jurisdiction over this case, we reverse and remand for entry of an order of dismissal. We do not retain jurisdiction.