# STATE OF MICHIGAN

# COURT OF APPEALS

COUNTY OF WAYNE,

       Plaintiff-Appellant,

v

MICHIGAN AFSCME COUNCIL 25 AND ITS
AFFILIATED LOCALS 25, 101, 409, 1659, 1862,
2057, 2926, AND 3317,

       Charging Parties-Appellees.

UNPUBLISHED
October 9, 2014

No. 312708
Michigan Employment Relations
Commission (MERC)
LC No. 09-000211

Before: RONAYNE KRAUSE, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

Respondent, Wayne County, appeals as of right the Michigan Employment Relations Commission (MERC) order adopting the administrative law judge's (ALJ) recommended order, ruling in favor of the charging parties, Michigan AFSCME Council 25 and its affiliated Locals 25, 101, 409, 1659, 1862, 2057, 2926, and 3317 (hereinafter "charging parties"), and finding that respondent breached its duty to bargain. We reverse and remand for further proceedings consistent with this opinion.

Respondent challenges the decision by the MERC that past practice supersedes the language of the relevant collective bargaining agreements (CBAs) in determining that retirees receiving disability pensions are to continue to receive health care benefits.

## I. STANDARD OF REVIEW

The applicable standard of review was discussed by our Supreme Court in *Macomb Co v AFSCME Council 25*, 494 Mich 65, 77; 833 NW2d 225 (2013) (citations omitted):

> In a case on appeal from the MERC, the MERC's factual findings are conclusive if supported by "competent, material, and substantial evidence on the whole record." Legal questions, which include questions of statutory interpretation and questions of contract interpretation, are reviewed de novo. As a result, an administrative agency's legal rulings "are set aside if they are in

-1-

violation of the constitution or a statute, or affected by a substantial and material error of law."

## II. ANALYSIS

In accordance with MCL 423.210(1)(e) of the Public Employment Relations Act (PERA), it is unlawful for a "public employer or an officer or agent of a public employer" to "[r]efuse to bargain collectively with the representatives of its public employees. . . ." "By statute, the employer and the representative of the employees are required to bargain for wages, hours, and other terms and conditions of employment, MCL 423.215, which constitute mandatory subjects of collective bargaining." *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Michigan Ed*, 458 Mich 540, 550-551; 581 NW2d 707 (1998). "The 'mandatory subjects of bargaining' include health insurance benefits." *Ranta v Eaton Rapids Pub Sch Bd of Ed*, 271 Mich App 261, 270; 721 NW2d 806 (2006) (citation omitted). "The statutory duty to bargain may be fulfilled by 'negotiating for a provision in the collective bargaining agreement that fixes the parties' rights and forecloses further mandatory bargaining. . . .' " *Port Huron Ed Ass'n MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 318; 550 NW2d 228 (1996) (citation omitted). "Once agreement is reached, the terms of the written bargaining agreement are preserved and neither management nor labor may unilaterally modify the agreement without the consent of the other party." *St Clair Intermediate Sch Dist*, 458 Mich at 566-567 (internal citations omitted). It is also, however, accepted that "[a] subject need not be explicitly mentioned in an agreement in order for the subject to be 'covered by' the agreement." *Port Huron Ed Ass'n*, 452 Mich at 322 n 16.

The case of *Macomb County v AFSCME Council 25*, *supra*, guides our resolution of the issues presented. The factual issues in *AFSCME Council 25* are not significantly distinguishable from those here. In *AFSCME Council 25*, the respondents changed the way they calculated retirement benefits without first bargaining for the change under the presumption that the county's retirement ordinance granted them discretion to do so and the charging parties argued that past practice had established an enforceable calculation of retirement benefits such that they could not be changed absent additional bargaining. 494 Mich at 82-83. Similarly, here respondent contends that its "reservation of rights" and zipper clauses gave it the authority to change the health insurance for disabled retirees and the charging parties argue that past practice of awarding benefits along with disability retirement prohibited a change without additional bargaining.

According to our Supreme Court, there are two analytical inquiries to be made when considering whether an employer is required to bargain before it alters a mandatory subject of bargaining. *Port Huron Ed Ass'n*, 452 Mich at 318. The first of these inquiries asks whether "the issue the union seeks to negotiate [is]. . . covered by or contained in the collective bargaining agreement." *Id*. (citations and internal quotation marks omitted). If the answer is negative, then the second inquiry asks whether "the union . . . somehow relinquish[ed] its right to bargain." *Id*. The importance of distinguishing between these two concepts has long been recognized. *Id.* at 319. Specifically:

When parties bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject. Because of the fundamental policy of freedom of contract, the parties are generally free to agree to whatever specific rules they like, and in most circumstances it is beyond the competence of the Authority, the National Labor Relations Board or the courts to interfere with the parties' choice. . . . On the other hand, when a union *waives* its right to bargain about a particular matter, it surrenders the opportunity to create a set of contractual rules that bind the employer, and instead cedes full discretion to the employer on that matter. For that reason, the courts require "clear and unmistakable" evidence of waiver and have tended to construe waivers narrowly. [*Id.*, quoting *Dep't of Navy v Fed Labor Relations Auth*, 962 F2d 48, 57 (CA DC, 1992).]

As an initial matter it must be determined whether the contractual language covers the subject at issue. "[W]hen a charging party claims that a respondent has failed to bargain over a mandatory subject of bargaining, the MERC must determine whether the agreement 'covers' the dispute." *AFSCME Council 25*, 494 Mich at 80 (citation and quotation marks omitted). The holding in *AFSCME Council 25* is that if the disputed issue is covered in the CBA, then the grievance procedure, and not the MERC, becomes the appropriate avenue for addressing the charging parties' claims. *Id*. at 87.

The ALJ and majority of the MERC panel erroneously determined that the relevant CBAs were silent with regard to health care benefits for disability retirees. Although the CBAs do not specifically reference the right to health care benefits for "disability retirees," this does not render the contracts silent on this subject, as "[a] subject need not be explicitly mentioned in an agreement in order for the subject to be 'covered by' the agreement." *Port Huron Ed Ass'n*, 452 Mich at 322 n 16 (citation omitted). The relevant CBAs and the Health and Welfare Benefit Plans reference employees needing to meet age and/or years of service criteria in order to qualify for health care benefits upon retirement. The 2006 Health and Welfare Benefit Plan clearly indicated: "*All employees* hired or rehired on or after December 1, 1990 *shall not be eligible for health care benefits . . . upon retirement unless they retire with thirty (30) or more years of credit service*." (Emphasis added.) Because the contract language is unambiguous, *Port Huron Ed Ass'n*, 452 Mich at 323, it should be given its plain meaning, *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012). Contrary to the MERC's majority holding, we find that the CBAs do contain contract language that addresses retiree eligibility and health care. Because we find that the disputed issue is covered in the CBAs, we also find that remand for arbitration is the appropriate remedy for addressing the charging parties' past practice claims.

"[A] term or condition of employment" may be established "through [a] past practice" mutually accepted by the parties. *St Clair Intermediate Sch Dist*, 458 Mich at 571 (citation omitted). *AFSCME Council 25* explained the concept and effect of past practice:

[T]his Court's caselaw allows a charging party to raise an unfair labor practice complaint for changing a term or condition of employment even when a collective bargaining agreement controls, but only when the new term or

-3-

condition amounts to an amendment of the collective bargaining agreement. However, overcoming an unambiguous provision in the collective bargaining agreement requires the charging parties to "show the parties had a meeting of the minds with respect to the new terms or conditions so that there was an agreement to modify the contract." The past practice must be "so widely acknowledged and mutually accepted that it creates an amendment to the contract." [494 Mich at 89, citing *Port Huron Ed Ass'n*, 452 Mich at 312, 329.]

Here, the parties stipulated to a 30 year history of past practice of providing disability retirees health care benefits regardless of whether they met age or years of service criteria. Respondent announced its intent to discontinue payments for health insurance to future disability retires without any bargaining. As of the date of this appeal, its intent was not made manifest. The parties agree that five retirees with disability pensions were awarded health care benefits after 2008 despite both the clear language of the applicable retirement benefits clause and the zipper clauses contained in Local 3317's contracts. The issue between the parties remains whether the continuation of the practice of awarding health insurance to individuals with disability retirement after the 2008 contract, and despite the zipper clause, constituted a past practice that required additional bargaining to change. On remand, the charging parties will have to employ the test from *AFSCME Council 25* and demonstrate that there existed a "meeting of the minds with respect to the new terms or conditions—[with respondent] intentionally choosing to reject the negotiated contract and knowingly act in accordance with the past practice." 494 Mich at 89 citing *Port Huron Ed Ass'n*, 452 Mich at 312.

## III.  CONCLUSION

"If the agreement covers the term or condition in dispute, then the details and enforceability of the provision are left to arbitration." *AFSCME Council 25,* 494 Mich at 80 (citation and quotation marks omitted). Here, the grievance and arbitration procedures provided for in Article 10 of the CBAs were bypassed. The scope of the MERC's authority in reviewing a claim of refusal-to-bargain when the parties have a separate grievance or arbitration process is limited to whether the agreement covers the subject of the claim. *Id*. at 81. When there is evidence that a past practice has modified the collective bargaining agreement, it is left to the arbitrator to make the final determination on the issue and not the MERC. On remand, the arbitrator is to determine whether the test in *AFSCME Council 25* has been met and if so, the appropriate contractual remedy.

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.[1]

/s/ Amy Ronayne Krause
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens

---

[1] We note that in its statement of questions presented respondent poses the following inquiry: "Is a disability retiree's entitlement to health care benefits vest [sic], if at all, under the terms of the CBA under which he or she has retired?"  Yet, a review of the brief fails to reveal any reference to this issue, any citation to law or discussion of pertinent facts or argument.  "It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court."  *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).