# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF WYANDOTTE,

        Plaintiff-Appellee,

v

POLICE OFFICERS ASSOCIATION OF
MICHIGAN,

        Defendant-Appellant.

UNPUBLISHED
January 13, 2015

No. 318563
Wayne Circuit Court
LC No. 13-006319-CL

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Defendant, the Police Officers Association of Michigan, appeals as of right an order granting summary disposition to plaintiff, the City of Wyandotte, and vacating an arbitration award granting defendant's grievance against plaintiff. We reverse and remand for further proceedings consistent with this opinion.

Plaintiff and defendant entered into a collective bargaining agreement (hereafter "the CBA") in 2009. The CBA expired on January 31, 2012, and at that time the parties had not been able to agree to a successor agreement. Pursuant to the CBA, if a new agreement was not reached before the expiration of the CBA, "the terms and provisions of [the] agreement [would] remain in full force and effect."

The current dispute centers on the healthcare cost provision of the CBA. Under the CBA, "plaintiff shall provide 100% of the premium for health care costs for employees." In 2011, the Michigan Legislature enacted two statutes which directly applied to the healthcare costs provision in the CBA. MCL 423.215b (2011 PA 54) of the Public Employment Relations Act (hereafter "PERA"),[1] MCL 423.201 to MCL 423.217, provides:

---

[1] PERA is the "dominant law regulating public employee labor relations." *Ranta v Eaton Rapids Public Sch Bd of Ed*, 271 Mich App 261, 265; 721 NW2d 806 (2006) (citation omitted). PERA obligates a public employer to bargain collectively "with respect to wages, hours, and other terms and conditions of employment . . . ." MCL 423.215(1). "The mandatory subjects of bargaining include health insurance benefits." *Ranta*, 271 Mich App at 270 (citation omitted).

(1) Except as otherwise provided in this section, after the expiration date of a collective bargaining agreement and until a successor collective bargaining agreement is in place, a public employer shall pay and provide wages and benefits at levels and amounts that are no greater than those in effect on the expiration date of the collective bargaining agreement. The prohibition in this subsection includes increases that would result from wage step increases. *Employees who receive health, dental, vision, prescription, or other insurance benefits under a collective bargaining agreement shall bear any increased cost of maintaining those benefits that occur after the expiration date.* The public employer is authorized to make payroll deductions necessary to pay the increased costs of maintaining those benefits. [MCL 423.215b(1) (emphasis added).]

Pursuant to MCL 423.215b, 100% of healthcare cost increases must be allocated to the employee after expiration of a collective bargaining agreement. The legislature also enacted 2011 PA 152, the Publicly Funded Health Insurance Contribution Act (hereafter "PFHICA"), MCL 15.561 to MCL 15.569, which required public employers to achieve a "hard cap" in healthcare benefit payment, or elect, by a majority vote of their city councils, to pay a maximum of 80% of costs (hereafter "the 80/20 option"). See MCL 15.563 to MCL 15.564. Public employers that elect the 80/20 option must follow MCL 15.564, which provides:

For medical benefit plan coverage years beginning on or after January 1, 2012, a public employer shall pay not more than 80% of the total annual costs of all of the medical benefit plans it offers or contributes to for its employees and elected public officials. . . . The public employer may allocate the employees' share of total annual costs of the medical benefit plans among the employees of the public employer as it sees fit.

Further, the PFHICA provides that collective bargaining agreements executed prior to its implementation are precluded from its cost-sharing requirements until after the agreement expires. See MCL 15.565. If a public employer does not enact the healthcare cost-sharing as required by PFHICA, the state reduces by 10% the "economic vitality payments" to that public employer. MCL 15.569.

On December 19, 2011, the Wyandotte City council elected to implement the 80/20 option for all of its employees. When the CBA expired on January 31, 2012, plaintiff began charging the bargaining unit employees 20% of the monthly premium in effect on January 1, 2012. Additionally, plaintiff experienced two healthcare premium increases after the expiration of the CBA, so it also charged bargaining unit employees 100% of these two increases pursuant to MCL 423.215b(1). Defendant thereafter initiated grievance proceedings, provided for by the CBA. Defendant asserted that even though the CBA expired, its duration clause required that the provisions of the agreement remain in full force and effect pending agreement of a new contract and that plaintiff improperly implemented the changes in law by charging the bargaining unit members more than 20% of their healthcare costs. The grievance was ultimately resolved in plaintiff's favor. The parties then proceeded to arbitration, also provided for in the CBA.

At arbitration, plaintiff challenged the arbitrator's authority to hear the claim because the issue rested solely on the newly enacted statutes. The arbitrator ultimately determined that he

had jurisdiction in the matter because the dispute arose out of the application of healthcare costs provision in the CBA. The arbitrator then determined that the applicable statutes must be applied together. Plaintiff must allocate 100% of the healthcare cost increases pursuant to MCL 423.215b(1). Plaintiff must then allocate 20% of the total annual costs of the healthcare premium pursuant to MCL 15.564, but the 20% must include the healthcare cost increases. In other words, plaintiff cannot impose 100% of the healthcare costs increases plus 20% of the total annual cost.

Plaintiff thereafter filed an action in the trial court and a corresponding motion for summary disposition seeking to vacate the arbitrator's decision, arguing that the arbitrator exceeded his authority and violated public policy. The trial court vacated the arbitration opinion and award and granted plaintiff's motion for summary disposition. Defendant now appeals.

Defendant argues that the trial court erred in vacating the arbitration award because the arbitrator did not exceed his authority in deciding the parties' contractual arbitration award. We agree.

"This Court reviews de novo a trial court's decision to enforce, vacate, or modify an arbitration award." *City of Ann Arbor v AFSCME Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). The trial court's determination of the arbitrability of an issue is reviewed de novo. *AFSCME Council 25 v Wayne County*, 290 Mich App 348, 350 n 2; 810 NW2d 53 (2010). A trial court's decision on a motion for summary disposition is also reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

It is well established that judicial review of an arbitration award is limited. *Ann Arbor*, 284 Mich App at 144. A court may not review an arbitrator's factual findings or decision on the merits or substitute its judgment for that of the arbitrator; a court may only decide whether the award *draws its essence from the contract*. *Port Huron Area Sch Dist v Port Huron Ed Ass'n*, 426 Mich 143, 150-152; 393 NW2d 811 (1986); *Ann Arbor*, 284 Mich App at 144; *Police Officers Ass'n of Mich v Manistee Co*, 250 Mich App 339, 343; 645 NW2d 713 (2002) (emphasis added). Judicial review may be of whether the arbitrator acted within the scope of his contractual authority or for an error of law that clearly appears on the face of the award or in the reasons stated for the decision. *36th Dist Court v Mich AFSCME Council 25, Local 917*, 295 Mich App 502, 508-509; 815 NW2d 494, rev'd in part on other grounds 493 Mich 879 (2012). If an arbitrator, in granting an award, did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the arbitration agreement, judicial review effectively ceases. *Ann Arbor*, 284 Mich App at 144.

The jurisdiction of the arbitrator is established by the parties' contract. *Beattie v Autostyle Plastics, Inc*, 217 Mich App 572, 577-578; 552 NW2d 181 (1996). To ascertain whether an issue may be arbitrated, the court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 163; 742 NW2d 409 (2007). A party cannot be required to arbitrate an issue it has not agreed to submit, but arbitration clauses are liberally construed and any doubts about arbitrability should be resolved in favor of arbitration. *In re Nestorovski Estate*, 283 Mich App 177, 203; 769 NW2d 720 (2009);

*Omega Constr Co v Altman*, 147 Mich App 649, 655; 382 NW2d 839 (1985). However, an arbitrator exceeds his power when he "act[s] beyond the material terms of the contract from which [he] primarily draw[s] [his] authority, or in contravention of controlling principles of law." *Nordlund & Assoc, Inc v Village of Hesperia*, 288 Mich App 222, 228; 792 NW2d 59 (2010), quoting *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004).

We agree with defendant that the arbitrator did not exceed his authority under the CBA in rendering his decision. This dispute arose out of application of the healthcare costs provision of the CBA. The arbitrator interpreted the healthcare costs provision of the CBA in light of the newly enacted statutes in PERA and PFHICA. The CBA broadly provides that, the "agreement is subject to the laws of the State of Michigan with respect to the powers, rights, duties and obligations of the City, the Police Officers Association of Michigan and the employees in the bargaining unit." The applicable statutes of PERA and PFHICA directly apply to the parties' CBA. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority as expressly circumscribed in the contract, a court may not overturn the decision even if convinced the arbitrator made a serious error." *Ann Arbor*, 284 Mich App at 144. Moreover, an arbitrator is not limited in the sources on which they can rely in resolving disputes.

> [O]rdinarily, unless otherwise expressly agreed, an arbitrator has great latitude in the sources he may rely upon in resolving disputes concerning the appropriate interpretation of specific contractual provisions, including aspirations expressed in a preamble, the past practices of the parties, and, in some circumstances, the reasonableness of policy decisions within the management rights reserved to an employer. *[Port Huron Area School Dist v. Port Huron Ed Ass'n,* 426 Mich 143, 160; 393 NW2d 811 (1986), quoting *United Steelworkers of America v Enterprise Wheel & Car Corp*, 363 US 593, 596-598; 80 S Ct 1358; 4 L Ed 2d 1424 (1960).]

An arbitrator may look to the law for help in determining the sense of the agreement. *United Steelworkers*, 363 US at 596-598.

Plaintiff asserts that because there is no provision in the CBA that grants the arbitrator the express authority to determine how plaintiff's responsibilities under newly enacted statutes correspond with plaintiff's responsibilities under the terms of the CBA, the arbitrator lacked authority to interpret the statutes. Plaintiff relies on *City of Saginaw v Michigan Law Enforcement Union*, 136 Mich App 542, 554; 358 NW2d 356 (1984). In *Saginaw*, the Court held that that specifically incorporating statutory language into a collective bargaining agreement grants an arbitrator authority to interpret the statute. *Id*. However, the Court did not hold that an express incorporation of a statute was necessary to allow an arbitrator to interpret a statute. We do not agree that the narrow holding in *Saginaw* should be applied so broadly as to control in the current dispute. Here, the agreement was expressly subject to the laws of the state, and the statutes at issue directly implicated the terms of the agreement. In addition, *Saginaw* was published before 1990 and, thus, is not binding on this Court. MCR 7.215(J); *Charles A Murray Trust v Futrell*, 303 Mich App 28, 49; 840 NW2d 775 (2013).

For these reasons, we hold that the arbitrator did not exceed his authority under the CBA, and the trial court erred by granting plaintiff's motion for summary disposition and vacating the

arbitration award. Accordingly, we reverse and remand for proceedings consistent with this opinion.[2]

Plaintiff argues an alternative ground of affirmance. An appellee may urge alternative grounds for affirmance without filing a cross appeal so long as a more favorable decision is not obtained. *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994). Plaintiff presented this argument to the trial court. Therefore, the issue is preserved. See *City of Riverview v Sibley Limestone*, 270 Mich App 627, 633 n 4; 716 NW2d 615 (2006).

Plaintiff argues that the arbitrator's decision was properly vacated because it violates public policy in that it requires plaintiff to violate PERA. This Court cannot enforce a collective bargaining agreement that is contrary to public policy, nor can this Court enforce an arbitration award interpreting a collective bargaining agreement that is contrary to public policy. *Gogebic Med Care Facility v AFSCME Local 992*, 209 Mich App 693, 697; 531 NW2d 728 (1995). However, we do not agree that the arbitrator's decision would require plaintiff to violate PERA. The arbitrator's decision requires the bargaining unit employees to pay for 20% of their total healthcare costs, which is in accordance with MCL 15.564. MCL 423.215b(4)(b) expressly states:

> [t]he increase in employee costs for maintaining health, dental, vision, prescription, or other insurance benefits after the collective bargaining contract expiration date that the employee is required to bear under subsection (1) s*hall not cause the total employee costs* for those benefits *to exceed the amount of the employee's share under [PFHICA]*, 2011 PA 152, MCL 15.561 to 15.269. [(Emphasis added.)]

Thus, by charging the bargaining unit employees for 100% of the cost increases plus 20% of their healthcare costs, plaintiff was actually violating PERA because it was charging the bargaining unit employees over 20% of their total healthcare costs. The arbitrator, in fact, implemented an award that corrected this violation. Thus, the arbitrator's opinion did not compel plaintiff to do this or to violate PERA, and, therefore, plaintiff was not entitled to summary disposition on this ground.

---

[2] Defendant also argues in its brief on appeal that arbitration was the proper forum for its grievance, as opposed to the Michigan Employment Relations Commission (MERC). This argument appears to respond to the trial court's statement that there may have been other proper forums, besides arbitration, to challenge the application of the PERA and PFHICA. Our review of the record reveals that while the trial court may have commented on the possible forums available to defendant, the court did not make a forum decision and the issue in the instant case is not whether MERC was the proper forum. The only issue before this Court is whether the arbitrator had the authority to hear this grievance.

Reversed and remanded. We do not retain jurisdiction. Defendant, the prevailing party, may tax costs. MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell