*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA BATISTA, DAVID BRITTEN,
TIMOTHY DONAHUE, AARON GAFFNEY,
JOHN HEWITT, RONALD KOEHLER, AMY
SWANTEK, CHRIS THOMSON, and MICHIGAN
ASSOCIATION OF SUPERINTENDENTS AND
ADMINISTRATORS,

        Plaintiffs-Appellants,

V

OFFICE OF RETIREMENT SERVICES,
MICHIGAN PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM, MICHIGAN PUBLIC
EMPLOYEES RETIREMENT SYSTEM BOARD,
PUBLIC SCHOOL EMPLOYEES RETIREMENT
SYSTEM BOARD MEMBERS, and EXECUTIVE
DIRECTOR OF RETIREMENT SERVICES,

        Defendants-Appellees.

FOR PUBLICATION
August 12, 2021
9:00 a.m.

No. 353832
Court of Claims
LC No. 19-000019-MZ

Before: HOOD, P.J., and MARKEY and GLEICHER, JJ.

MARKEY, J.

This case involves issues regarding the determination of reportable "compensation" under the Public School Employees Retirement Act (the Retirement Act), MCL 38.1301 *et seq.*, and the Reporting Instruction Manual (the manual) prepared and implemented by defendant Office of Retirement Services (ORS). Resolution of these issues has a bearing on retirement allowances or pension payments for public school superintendents and administrators who work under personal employment contracts, not collective bargaining agreements. The Court of Claims granted summary disposition to defendants, and plaintiffs appeal by right. We reverse and remand for entry of judgment in favor of plaintiffs.

-1-

## I. THE STATUTORY FRAMEWORK

To provide context to and an understanding of our discussion of the facts, the procedural history of the case, and the parties' arguments, we begin with a review of the relevant language contained in the Retirement Act. The "Michigan public school employees' retirement system [was] created for the public school employees of this state." MCL 38.1321. The retirement system is intended to "be a qualified pension plan created in trust under section 401 of the internal revenue code, 26 USC 401[.]" MCL 38.1408(1). In general, "upon [a] member's retirement from service . . ., a member shall receive a retirement allowance that equals the product of the member's total years, and fraction of a year, of credited service multiplied by 1.5% of the member's *final average compensation*." MCL 38.1384(1) (emphasis added).[1] A member's "final average compensation" is defined, in part, as "the aggregate amount of a member's compensation earned within the averaging period in which the aggregate amount of compensation was highest divided by the member's number of years, including any fraction of a year, of credited service during the averaging period." MCL 38.1304(12).

With respect to the term "compensation," MCL 38.1303a(1) provides that it "means the remuneration earned by a member for service performed as a public school employee." MCL 38.1303a(2) states that "[c]ompensation includes salary and wages and all of the following . . . ." MCL 38.1303a(2) then lists eight specific types of payments that constitute compensation, e.g., "[l]ongevity pay[,]" MCL 38.1303a(2)(d). MCL 38.1303a(3) lists types of payments that do not constitute compensation, including the following:

> (e) Remuneration paid for the specific purpose of increasing the final average compensation.

> (f) Compensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by the normal salary schedule for the current job classification. In cases where the current job classification in the reporting unit[2] has less than 3 members, the normal salary

---

[1] A "member" is, with some exceptions, "a public school employee." MCL 38.1305(1). There is no dispute that the individual plaintiffs are members. The term "retirement allowance" is defined as "a payment for life or a temporary period provided for in this act to which a retirant, retirement allowance beneficiary, or refund beneficiary is entitled." MCL 38.1307(5).

[2] MCL 38.1307(3) provides:

> Except as otherwise provided in this subsection, "reporting unit" means a public school district, intermediate school district, public school academy, tax supported community or junior college, or university, or an agency having employees on its payroll who are members of this retirement system. The reporting unit shall be the employer for purposes of this act. . . . .

schedule for the most nearly identical job classification in the reporting unit or in similar reporting units shall be used.

MCL 38.1303a(5)(a) and (b) provide that the retirement board,[3] based on information and documentation provided by a member, shall determine "[w]hether any form of remuneration paid to a member is identified in this section[,]" and "[w]hether any form of remuneration that is not identified in this section should be considered compensation reportable to the retirement system under this section." Finally, MCL 38.1303a(6) states that "[i]n any case where a petitioner seeks to have remuneration included in compensation reportable to the retirement system, the petitioner shall have the burden of proof."

## II. BACKGROUND – OVERVIEW

Plaintiffs are current or retired public school superintendents and administrators who work or worked under personal employment contracts, not collective bargaining agreements.[4] Pension payments made to superintendents and administrators are calculated by taking into consideration years of credited service and, relevant here, their "final average compensation." Accordingly, there must be a determination of the individual's annual compensation during the years of employment. MCL 38.1303a(3) makes clear that not all compensation is reportable for purposes of ascertaining a member's final average compensation. And annual increases in compensation in excess of the normal salary schedule for a job classification are, effectively, nonreportable. MCL 38.1303a(3)(f).[5] The Retirement Act does not define "normal salary schedule" or provide any further elaboration on the phrase. This is where the ORS's manual comes into play with respect to superintendents and administrators.

The ORS, which is a division of the Department of Technology, Management and Budget, administers the retirement system. The ORS's manual, prepared annually, is designed to assist payroll offices, working in unison with the ORS, in ensuring the accuracy of account information and pension payments for members. The manual indicates that it is a summary of basic plan provisions found in the Retirement Act and that the Retirement Act governs if there are any discrepancies between the Retirement Act and the manual. The ORS creates normal salary increase (NSI) schedules for superintendents and administrators. These schedules are then placed in the manual. The following is an excerpt from the manual presented to the Court of Claims:

> In cases where a job classification has fewer than three members (superintendents, assistant superintendents, administrative assistants), ORS applies a normal salary schedule for the most nearly identical job classification in similar reporting units. To determine what constitutes a normal salary schedule for these job classifications, ORS has aggregated salary data for each classification and has

---

[3] The "retirement board" is "the board provided to administer th[e] retirement system." MCL 38.1307(7).

[4] Plaintiffs also include the Michigan Association of Superintendents and Administrators.

[5] The ORS's manual speaks in terms of "reportable" and "nonreportable" compensation.

calculated the annual average increases, which resulted in the Normal Salary Increase (NSI) percentage tables provided below.

For each of the respective job classifications, similar reporting units are grouped into one of four categories based on payroll size. For each grouping, the annual average salary increase percentage is calculated and doubled to allow a more generous and flexible deviation of 'normal.' Annual increases in compensation for a particular job classification are reportable if they are within the NSI percentages for a given year. Increases in excess of the NSI are excluded.

Because the [Retirement Act] requires that all compensation increases fall within a normal salary schedule, any portion of salary above the applicable NSI in a given year will remain subject to the NSI in subsequent years. This is because the NSI included for one year becomes the base salary upon which the next year's allowable increase is calculated. . . .

As indicated, the NSI schedules set forth annual allowable percentages with respect to increases in compensation. Yearly compensation increases at or below a particular enumerated percentage constitute reportable compensation that can be used for determining a member's final average compensation. But annual compensation increases above the percentage represent nonreportable compensation that cannot be considered in calculating the final average compensation. Plaintiffs received, in various forms, annual increases in compensation, not all of which were taken into consideration for purposes of ascertaining their final average compensation. In other words, a portion of the increase in compensation was characterized as nonreportable compensation under the NSI schedules created by the ORS.

## III. THE LITIGATION

In Count I of their amended complaint, plaintiffs alleged in pertinent part that the Retirement Act does not authorize the ORS to create the NSI schedules and apply them to plaintiffs. Plaintiffs asserted, therefore, that the ORS acted in violation of the Retirement Act by imposing the NSI schedules on plaintiffs. In Count II, plaintiffs contended that the NSI schedules violate Const 1963, art 9, § 24, which provides, in relevant part, that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." In Count III of the complaint, plaintiffs alleged a violation of the Administrative Procedures Act (APA), MCL 24.201 *et seq*. Plaintiffs claimed that the NSI schedules, assuming their validity under the Retirement Act, must be promulgated as "rules," as defined in MCL 24.207, under the specific procedures set forth in Chapter 3 of the APA, MCL 24.231 *et seq.*, and that the failure to do so constitutes a violation of the APA. In Count IV, plaintiffs maintained that their rights to procedural due process under the Michigan and United States Constitutions had been violated. Plaintiffs asserted that they had a property right to their compensation and pensions which entitled them to notice and a hearing before their pensions were capped by the application of the NSI schedules, and that the ORS had not provided them with pre-deprivation hearings or proper post-deprivation reviews. In Count V of the complaint, mistakenly labeled Count IV, plaintiffs alleged that they are entitled to civil damages under 42 USC 1983 for the violation of their due-process rights.

Although plaintiffs did not request any type of relief with respect to each individual count, at the conclusion or very end of the complaint, plaintiffs sought the following rulings and relief from the Court of Claims:

(1) Issue declaratory ruling holding the NSI [schedules] as created by the ORS and placed into the [manual] to be unlawful and stricken from the [manual] and to no longer be used in application to the Plaintiffs and all other affected public employees[;]

(2) Issue declaratory ruling holding that the application of the NSI [schedules] to be unlawful and that any prior application of it to any Plaintiff or other affected public employee to be stricken[;]

(3) Issue an order that ORS conduct a new review of compensation for any Plaintiff or other affected public employee that has had their compensation reduced through the usage of the NSI [schedules] and order that review to be conducted without consideration of the NSI [schedules;]

(4) Issue an order granting back pay to any affected public employee that is currently receiving a pension that was reduced in any manner because of the application of the NSI [schedules;]

(5) Issue an order that ORS must follow the protocols and procedures of the APA when adopting or amending portions of the [manual] that are used and applied as rules by the ORS[;]

(6) Issue an order that a pre-deprivation hearing must be conducted prior to reducing the reported compensation or [final average compensation] of a member of the System[;]

(7) Issue an order granting reasonable costs and actual attorney fees to Plaintiffs for bringing this matter and administrative proceedings leading to this matter[;[6]]

(8) Appoint a Special Master for purposes of reviewing pleadings and claims supporting the creation of a Class pursuant to MCL § 600.6419(1)(c) . . . [; and]

(9) Any other relief that this Court deems proper.

---

[6] The individual plaintiffs had previously pursued administrative relief by arguing to the retirement board that the creation and application of the NSI schedules violated the Retirement Act. The retirement board rejected the argument on the basis that the same argument regarding the NSI schedules had been entertained by the retirement board many times in the past or on judicial review and that all those challenges had been unsuccessful.

Defendants moved for summary disposition, presenting a variety of arguments in support of dismissal of plaintiffs' lawsuit. The Court of Claims granted the motion for summary disposition, except in regard to plaintiffs' APA count, in an extensive written opinion and order. The Court of Claims first addressed defendants' contention that the Court lacked subject-matter jurisdiction because plaintiffs had failed to exhaust their administrative remedies. The Court of Claims ruled that to the extent that plaintiffs' claims were challenging the validity of using the NSI schedules *in general*, the claims were not barred by a failure to exhaust administrative remedies. With respect to claims seeking a recalculation of the pension benefits for individual plaintiffs, the Court of Claims proceeded on the assumption that those claims were not precluded by a failure to exhaust administrative remedies.[7]

The Court of Claims next determined that claims involving the pension benefits of individual plaintiffs were barred for failure to strictly comply with the notice requirements of MCL 600.6431(1),[8] even if there were actual notice and regardless whether prejudice was incurred. The Court of Claims agreed with defendants' contention that the claims of the individual plaintiffs accrued on June 30, 2017;[9] therefore, because the complaint was filed more than a year later, any effort to revisit the calculation of their pension benefits was essentially time-barred under MCL 600.6431(1). The Court of Claims noted that "plaintiffs have not even argued that they complied with MCL 600.6431, nor have they challenged defendants' assertions about the accrual dates of their respective claims." Given the failure to meaningfully refute defendants' argument under MCL 600.6431(1), the Court of Claims concluded that plaintiffs' claims seeking re-visitation or recalculation of individual pension benefits were time-barred by operation of MCL 600.6431(1). The Court of Claims determined that the same reasoning applied to the claims alleging state and federal due-process violations, the claim seeking relief under 42 USC 1983, and the claim asserting a violation of Const 1963, art 9, § 24. Accordingly, pursuant to MCR 2.116(C)(7), the Court of Claims summarily dismissed Counts II, IV, and V of plaintiffs' complaint.

The Court of Claims ruled, however, that MCL 600.6431(1) did not preclude plaintiffs' claims for declaratory relief. With respect to Count I of plaintiffs' complaint, the Court of Claims addressed whether the ORS's creation and use of the NSI schedules were authorized by the

---

[7] Earlier in its discussion, the Court of Claims acknowledged that the individual plaintiffs had sought agency review and were rebuffed by the retirement board. The Court of Claims also indicated that plaintiffs had "presented a compelling argument as to why further administrative review—were it required—would have been futile[.]"

[8] MCL 600.6431(1) provides:

> Except as otherwise provided in this section, a claim may not be maintained against this state unless the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies.

[9] In the fact section of its written opinion and order, the Court of Claims stated that "plaintiffs have not disputed the notion that all of OSR's discrete decisions that purportedly harmed[] the individual plaintiffs were made on or before June 30, 2017."

Retirement Act. The Court of Claims stated that MCL 38.1303a(5) grants the retirement board, and thus the ORS, the authority to review forms of remuneration paid to members in order to assess whether it is reportable compensation. The Court of Claims then focused its attention on MCL 38.1303a(3)(f), which, as indicated earlier, excludes from compensation the following:

> Compensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by the normal salary schedule for the current job classification. In cases where the current job classification in the reporting unit has less than 3 members, the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units shall be used.

The Court of Claims agreed with defendants that MCL 38.1303a(3)(f) gives the ORS the authority to create the NSI schedules for superintendents and administrators because those individuals are not subject to a normal salary schedule that would typically be found in a collective bargaining agreement. The Court of Claims also opined that the exclusions from compensation in MCL 38.1303a(3) apply to all members, which would necessarily include superintendents and administrators. The Court of Claims observed that "there is no support for the proposition that administrators and superintendents were intended to be excluded from any exception." The Court of Claims further explained:

> While . . . superintendents and administrators are not subject to a typical salary schedule like other public school employees might be, MCL 38.1303a(3)(f) expressly anticipates members—like superintendents and administrators—who are not subject to a normal salary schedule. The statute does so by allowing the ORS Board to use, in the case of small reporting units not subject to a salary schedule, "the normal salary schedule for the most nearly identical job classification" in the school district or similar school districts. . . . Stated otherwise, the plain language of the statute, consistent with recognizing the authority of the ORS Board to review all forms of remuneration, unambiguously gives the ORS Board authority to ensure that all salary increases—without exception—are in line with a "normal salary schedule" for the type of job classification at issue. The ORS Board's interpretation of MCL 38.1303a(3)(f) as authorizing the creation of the NSI is not in conflict with the plain language of the [Retirement Act].

The Court of Claims additionally remarked that "[i]f the Legislature had intended to exclude administrators and superintendents from the reach of MCL 38.1303a(3)(f), it could have expressly done so." The Court of Claims also indicated that the ORS's construction of MCL 38.1303a(3)(f) was entitled to respectful consideration. The Court of Claims granted summary disposition in favor of defendants under MCR 2.116(C)(8) with respect to Count I of plaintiffs' complaint.

In regard to Count III of the complaint pertaining to the alleged APA violation, the Court of Claims declined to address the matter because defendants had not actually presented an argument for summary dismissal of that count in their brief. The Court of Claims later denied plaintiffs' motion for reconsideration relative to the counts that had been dismissed.

Subsequently, the parties filed competing motions for summary disposition on the issue of the alleged APA violation in Count III of the complaint. The Court of Claims noted that the issue before it was whether the NSI schedules reflected rulemaking by the ORS without honoring the required APA procedures for rule promulgation. The Court of Claims ruled that the NSI schedules merely explain reportable and nonreportable "compensation," including when a job classification in a reporting unit has fewer than three members. According to the Court of Claims, the NSI schedules do not add requirements or terms to the statutory meaning of "compensation." The Court of Claims further indicated that the manual itself provides that it is merely a summary of the Retirement Act and is simply meant to assist schools in determining reportable compensation. The Court of Claims viewed the manual as an interpretive statement or guideline, not a rule, opining that there was "ample caselaw wherein explanatory manuals did not constitute 'rules' under the APA." Ultimately, the Court of Claims concluded that there was no genuine issue of material fact that the NSI schedules found in the manual are not administrative rules. Therefore, the APA's rulemaking procedures did not apply. The Court of Claims granted defendants' motion for summary disposition under MCR 2.116(C)(10), denied plaintiffs' motion for summary disposition, and dismissed the case. Plaintiffs appeal by right.

IV. ANALYSIS

A. PLAINTIFFS' ARGUMENTS ON APPEAL

On appeal, plaintiffs present four broad arguments. First, they contend that the Court of Claims erred by ruling that the NSI schedules defendants created and administered do not violate the Retirement Act. Second, plaintiffs maintain that the Court of Claims erred by concluding that the NSI schedules do not violate the APA and its rulemaking procedures. Third, plaintiffs assert that the Court of Claims erred by determining that the claim of an alleged violation of Const 1963, art 9, § 24, was time-barred with respect to broad declaratory relief under the notice requirements of MCL 600.6431(1). Fourth, and finally, plaintiffs argue that the Court of Claims erred by ruling that the claims alleging due-process violations were time-barred in regard to broad declaratory relief under the notice requirements of MCL 600.6431(1).

B. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). This Court additionally reviews de novo issues of statutory interpretation. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). We also review de novo questions of constitutional law. *Adair v Michigan*, 497 Mich 89, 99; 860 NW2d 93 (2014).

C. PRINCIPLES OF SUMMARY DISPOSITION UNDER MCR 2.116(C)(7), (8), AND (10)

In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court set forth the principles governing a motion for summary disposition brought pursuant to MCR 2.116(C)(7):

> Under MCR 2.116(C)(7) . . ., this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be

-8-

accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

MCR 2.116(C)(8), which provides for summary disposition when a "party has failed to state a claim on which relief can be granted," tests the legal sufficiency of a complaint. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). The trial court may only consider the pleadings in rendering its decision under MCR 2.116(C)(8). *Id*. All factual allegations in the complaint are accepted as true. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380-381, 563 NW2d 23 (1997). "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie*, 465 Mich at 130.

MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

## D. STATUTORY CONSTRUCTION

In *Slis v Michigan*, 332 Mich App 312, 335-336; 956 NW2d 569 (2020), this Court recited the well-established rules of statutory construction:

This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature.

Judicial construction of a statute is only permitted when statutory language is ambiguous. A statute is ambiguous when an irreconcilable conflict exists between statutory provisions or when a statute is equally susceptible to more than one meaning. When faced with two alternative reasonable interpretations of a word in a statute, we should give effect to the interpretation that more faithfully advances the legislative purpose behind the statute. [Quotation marks and citations omitted.]

An agency's construction of a statute that the agency is charged with executing is entitled to respectful consideration, and there must be cogent reasons for overruling the agency's interpretation of the statute. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008). "Furthermore, when the law is 'doubtful or obscure,' the agency's interpretation is an aid for discerning the Legislature's intent." *Id.* But an agency's construction is not binding on the courts, and the interpretation cannot conflict with the intent of the Legislature as expressed in the plain language of the statute at issue. *Id.*

## E. DISCUSSION AND HOLDING

We hold that the Retirement Act does not authorize the ORS to create and implement NSI schedules and apply them to superintendents and administrators under the plain and unambiguous language of the statutory scheme. In light of our ruling, it is unnecessary to address the additional arguments plaintiffs pose in this appeal.

As indicated earlier, reportable compensation does not include "[c]ompensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by the normal salary schedule for the current job classification." MCL 38.1303a(3)(f). This is the first of two sentences in Subdivision (f) of the statute, each of which we will separately analyze. Again, the Legislature did not define the terminology "normal salary schedule." We find it abundantly clear from the Legislature's references to "the" normal salary schedule and "the" current job classification that the Legislature was necessarily alluding to schedules and classifications that were familiar to school personnel and already in place or existence in the particular contextual setting of collective bargaining. The language "normal salary schedule" for a "job classification" plainly pertains to salary schedules contained in collective bargaining agreements. See *Kalamazoo City Ed Ass'n v Kalamazoo Pub Sch*, 406 Mich 579, 590-591; 281 NW2d 454 (1979) ("The second finding entailed defendant's failure to observe the automatic salary progression schedule traditionally incorporated into each collective bargaining agreement between the parties."); *Ranta v Eaton Rapids Pub Sch Bd of Ed*, 271 Mich App 261, 270; 721 NW2d 806 (2006) ("The Court held that where the collective bargaining agreement required all

teachers to be placed at a step level applicable to his or her experience, the petitioner's placement on the salary schedule involved a labor dispute and presented an issue of contract interpretation."); *Martin v East Lansing Sch Dist*, 193 Mich App 166, 169; 483 NW2d 656 (1992) ("the 1983-1986 collective bargaining agreement . . . contained a step-scale salary schedule"). The language in the initial sentence of MCL 38.1303a(3)(f) simply does not invite or authorize the creation of salary schedules and classifications by the ORS. Superintendents and administrators such as plaintiffs are not compensated pursuant to normal salary schedules; rather, they perform their duties and functions pursuant to personal employment contracts that by definition are distinct and tailored to particular individuals.

To justify the creation of the NSI schedules by the ORS, defendants rely on the second sentence of MCL 38.1303a(3)(f), which provides that "[i]n cases where the current job classification in the reporting unit has less than 3 members, the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units shall be used." Indeed, the heart of this case involves the construction of this provision. The second sentence of MCL 38.1303a(3)(f) clearly concerns the same setting as and is a continuation of the preceding sentence, except that it addresses a situation where the job classification has fewer than three members—no other deviation is involved or contemplated. The plain language of the sentences does not reflect a jump from addressing employees subject to salary schedules and collective bargaining agreements to a focus on employees who work under personal employment contracts. Moreover, the second sentence of MCL 38.1303a(3)(f) in no form or manner authorizes the *creation* of a normal salary schedule or an NSI schedule as described in the ORS's manual. Instead, it merely directs the use of an existing normal salary schedule for another job classification in the reporting unit or a similar reporting unit. Because the plain and unambiguous language does not authorize the creation of the NSI schedules, we need not entertain plaintiffs' arguments regarding legislative history or their uncontested assertion that some reporting units have three or more assistant superintendents, yet the NSI schedules are applied to them.

MCL 38.1303a(5)(a) and (b) provide that the retirement board, based on information and documentation provided by a member, shall determine "[w]hether any form of remuneration paid to a member is identified in this section[,]" and "[w]hether any form of remuneration that is not identified in this section should be considered compensation reportable to the retirement system under this section." The plain and unambiguous language of MCL 38.1303a(5) does not provide broad authority to the ORS or any of the defendants to create NSI schedules for superintendents and administrators. MCL 38.1303a(5) authorizes the retirement board to make individual compensation determinations. See *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576-577; 659 NW2d 629 (2003) (Retirement Act empowers the retirement board to determine what remuneration is to be considered a retiree's reportable compensation under MCL 38.1303a[5], with the petitioner having the burden of proof in the setting of a contested case). Moreover, MCL 38.1303a(5) confines the retirement board's decision-making authority to ascertaining whether a "form" of remuneration received by a member constitutes reportable compensation. There does not appear to be any dispute that the form of remuneration received by the individual plaintiffs was generally reportable compensation under MCL 38.1303a(1) and (2).

Finally, to be clear, we are not ruling that superintendents and administrators such as plaintiffs are not otherwise subject to the provisions of MCL 38.1303a; as members, MCL 38.1303a generally applies to them. We are only holding that MCL 38.1303a(3)(f) does not govern

members who work pursuant to personal employment contracts because in such cases normal salary schedules and collective bargaining agreements are not involved. MCL 38.1303a(3)(f) does not authorize the ORS to create NSI schedules for superintendents and administrators.

In sum, the ORS had no statutory authority under MCL 38.1303a to create the NSI schedules. Moreover, even assuming that the NSI schedules were merely interpretive statements or guidelines, as urged by defendants, and not rules, we find they were still challengeable and are invalid. See *Chonlara, Inc v State Bd of Ed*, 442 Mich 230, 243; 501 NW2d 88 (1993) (interpretive statements that go beyond the scope of the law may be challenged and an interpretation unsupported by the enabling statute or act constitutes an invalid interpretation).

In light of our holding that the NSI schedules were not lawfully created and are invalid, we need not address plaintiffs' argument that the NSI schedules violated the APA's procedural requirements with respect to rulemaking. Plaintiffs also argue that the trial court erred by summarily dismissing the constitutional claims in Counts II and IV because the claims not only concerned the individual plaintiffs, they also constituted broad facial challenges seeking declaratory relief that would impact a whole class of individuals who were not employed under collective bargaining agreements.[10] Given that we have invalidated the NSI schedules because their creation exceeded the authority of the ORS, we need not assess whether they were also unconstitutional. See *Int'l Business Machines, Corp v Dep't of Treasury*, 496 Mich 642, 662 n 67; 852 NW2d 865 (2014) (we will not reach constitutional issues when unnecessary to do so to resolve an appeal).

We reverse and remand for entry of judgment in favor of plaintiffs with respect to declaratory relief and the invalidity of the NSI schedules under the Retirement Act. We do not retain jurisdiction. We decline to award taxable costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher

---

[10] Plaintiffs do not challenge the dismissal of Count V that sought civil damages under 42 USC 1983.